The action was continued nisi for advisement, and at the November term following, in Suffolk, the opinion of the Court was delivered by
Pabsons, C. J.
The plaintiff, to maintain his action, relies on the second section of the provincial statute of 6 G. 2, c. 2. Upon this section two points have been made by the defendant; one is, that the section is not now in force; the other is, that, if it is in force, the true construction of it will not aid the plaintiff in supporting his action.
This provincial statute was unquestionably in force, until the ratification of the present constitution, which provides, in chapter 6, art. 6, for the further continuance of all laws then existing, until they should be altered or repealed*. It is not supposed that this provincial statute has been since expressly repealed ; but a revision, by the legislature, of the subject matter of it, has, it is said, virtually repealed it.
The provincial statute of 12 G. c. 4, expressly empowered coroners to appoint deputies; but in the statute of 1783, c. 43, revising the several laws relating to the power and duty of coroners, and entitled “An act describing the duty and powers of coroners,” the authority to appoint deputies is omitted; and in a case of Ingalls vs. Story, in the county of Essex, which was mentioned [ * 143 ] in the argument, the writ * was served by a deputy of the coroner; and exception being taken in abatement, it was holden that, after the passing of the last-mentioned statute *121 the coroner could no longer appoint deputies, although there is no express repeal of any former acts, and the exception was allowed.
If the object of the revising statute of 1783, c. 57, entitled “An act directing the issuing, extending, and serving, of executions,” was to embrace all the antecedent laws, and to reduce them to one system, the case of Ingalls vs. Story will be in point. The first section of this last statute relates to the suing of executions, and the ascertaining of the times when they shall be returnable. The second section provides the manner of levying executions on lands at the creditor’s election; and the fifth section directs in what manner the officer shall proceed in the sale of goods and chattels seized on execution.
Upon this view of the statute, the object of it does not appear to comprise several provisions of the former laws, undoubtedly intended to be preserved. For no provision is here made for the levying of executions on the lands of deceased persons, for the payment of their debts; and for this purpose we must have recourse to the statute of 1783, c. 32, § 7. And as there is no provision for settling cross executions, we may reasonably presume that the provincial statute of 6 G. 2, c. 2, was not included in the revision.
If it be supposed that this statute was before the legislature when revising the laws, because the first section, relating to mutual book accounts, appears to have been revised in the twelfth section of the statute of 1784, c. 28, it may well be denied that this first section was the object of revision. For the same provision was reenacted in the temporary provincial statute of 16 G. 2, c. 5, with additional provisions, all of which are the subject of the twelfth section of the statute of 1784, c. 28. We are, therefore, of opinion that the second section of the provincial statute of 6 G. 2, c. 2, is in force, and not included among the provisions of the revised statute.
*The next point is the operation of this law upon the [ * 144 ] case at bar. The plaintiff would consider this provision so as to authorize sheriffs and coroners, in cases like the present, to serve either wholly or partially, and to return executions not directed to them, and which, by the existing laws, could not lawfully be directed to them; while the defendant’s construction will only introduce a new mode of satisfying cross executions, by officers already authorized to serve and return them. And we are of opinion that the last construction is the true one.
The act applies to cases, when it shall happen that the sheriff shall have cross executions, or when a coroner, or a constable, shall *122 have cross executions; but neither the sheriff, coroner nor constable can be considered as having any executions, but such as are directed to them, and which they are obliged to obey; or, in other words, these officers must have these writs in their possession, as officers authorized and obliged to obey them.
The present case very rarely happens, and is not within this act, which, like other statutes, must be considered as adapted to the cases that more frequently occur. The defendant, a coroner, to whom the execution of Gates was not and could not regularly be directed, was not obliged to receive the same, nor to return it in any part satisfied, he being a stranger to the precept. The defendant must, therefore, have judgment and his costs. .
As these cross judgments were recovered in the same court, at the same term, and were final between the parties, the regular mode, in which Gates might have been relieved, would have been an application to the court to stay execution in Jewell’s suit against him, upon his acknowledging satisfaction of the amount of Jewell’s judgment against him and Goodenow, in part of his judgment against Jewell, and praying execution for the balance.
We do not consider the objection of any weight, that Goodenow and Gates are debtors on one execution, and Gates alone ( * 245 j creditor on the other; for Gates might satisfy *the execution against Goodenow and himself, and if he thought proper to apply his execution against Jetuell to that purpose, he might; and on Jewell’s execution being satisfied by Gates, the officer ought immediately to have redelivered to Goodenow his chattels, on being reimbursed his expenses.

Costs for the defendant.