Lincoln J.
dissenting. The liability of the respondent to the forfeiture created by law for a neglect of military duty, depends upon the construction to be given to the provisions in the statutes of the United States, recited in the act of this commonwealth for regulating, governing and training the militia, which relate to the enrolment of the citizens, and the opportunity subsequently afforded them for military equipment. Had the question involved in the issue of the cause been entirely original, and now for the first time presented for judicial consideration, I should have entertained less apprehension of mistake and error in the opinion, upon which, after the best examination I have been able to make, my mind rests with the most satisfaction. The issue of the cause as between the' parties to it is but of little consequence, but the decision which is had will be of constant application to the condition of the citizens of this commonwealth, in relation to the discharge of a most important public duty, and from its bearing upon laws of common obligation in every State of the Union, will be regarded with interest and examined with care elsewhere, and most probably by other judicial tribunals. It has been from this consideration, that more time has been given to advising upon the case than is usual, and more of regret is now entertained at an ultimate diversity of opinion, than upon subjects of less extensive influence.
The law of the United States passed in 1792, upon the *190 subject of the militia, requires the enrolment of every free, able-bodied, white male citizen of the respective States, who shall be of the age of eighteen years and under the age of forty-five years, with the exceptions mentioned in the act, and makes it the duty of the captains or commanding officers of companies to enrol such citizens in the companies within the bounds of which they respectively reside, and also those who shall from time to time arrive to the age of eigh teen years, or being of the age of eighteen years and under the age of forty-five shall come to reside within their bounds.
By this explicit enactment, which is still in force and has never been modified by the legislature, nor received any other than a literal construction, a citizen of the description mentioned in the statute becomes liable to enrolment immediately upon arriving at the age of eighteen years. Upon the facts in the case before us, there can be no doubt therefore that the respondent was rightfully enrolled in the company of which the petitioner was clerk, at the time of his notification to do military duty, and if he is not excused by law for his neglect of appearance, he has incurred the forfeiture, for the recovery of which the original complaint was filed. The statute before cited, in the same section, but in a distinct and entirely independent clause, provides, that every citizen so enrolled shall, within six months after he is notified of his enrolment, provide himself with the arms and equipments, which are particularly enumerated, and shall appear so armed and equipped, when called out to exercise or into service ; and it has been argued that this provision dispenses with his personal appearance for the period of six months after his enrolment. This construction of the statute of 1792 may be sound and defensible, for it is most obvious, as judicially held in the case of the Commonwealth v. Annis, 9 Mass. R. 31, that where the law required an appearance of the soldier armed and equipped, it could not intend an obligation to appear within the period allowed for providing himself with aims and equipments. But by a subsequent statute passed in 1803, in the 2d section, it is enacted, that “ every citizen, duly enrolled in the militia, shall be *191 constantly provided with arms &c., agreeably to the direclions of the said act, (referring to the former act,) from and after he shall be duly notified of his enrolment, and any notice or warning to the citizen so enrolled to attend any company, battalion or regimental muster or training, which shall be according to the laws of the State in which it is given for that purpose, shall be deemed a legal notice of his enrolment.” This language is altogether precise and intelligible, and as it seems to me admits of no misconstruction. The statute was passed after an experience of more than ten years of the operation of the provision in regard to the enrolment of the soldier, contained in the former act, and was doubtless intended to effect some change in the law’ in this particular. By the first act the enrolled soldier was allowed six months, in which to provide himself with arms and equipments, after notice of enrolment; by the latter act he was required to be provided from and after he was notified of his enrolment, and any notice to train was made notice of enrolment. It is expressly declared in the statute of 1803, that he shall be constantly provided from and after, using these most precise and definite terms ; not as in the former act, that within six months he shall provide himself. The second section of the statute of 1803 contains no other provision than in relation to the time when the citizen, after enrolment, shall be provided with arms, and it enacts that it shall be constantly from and after he is notified of his enrolment. A different construction given to the section would render it utterly insignificant and unmeaning, and if notwithstanding its enactment the indulgence of six months allowed by the act of 1792 is still continued, the wisdom of Congress must have been betrayed into the use of terms contradictory and repugnant to a plain and direct purpose. An application of the provisions of the several statutes to the facts in the present case, will serve to illustrate the argument. The first section of the statute of 1792 describes the persons who shall be enrolled. The respondent comes within .this description. No objection is made that he was not duly enrolled, but <?n the other hand his claim to be discharged of the forfeiture which is ^required of him proceeds on the ground *192 of his due enrolment, and denies his liability to personal service within six months next after he was notified. By the 2d section of the statute of 1803, additional to that of 1792, any notice or warning to the citizen so enrolled, to attend any company, battalion or regimental muster or training which shall be according to the laws of the State in which it is given, is declared to be due notice of enrolment. The case finds that the respondent had such notice to attend a brigade review and inspection. By the same section of the law, any person so enrolled and notified shall constantly thereafter be provided with arms and equipments, and shall appear so armed and equipped when’ called out for military duty. The respondent, being so enrolled and notified, was not provided with arms and equipments required, and did not appear when called out as before mentioned. The obligation to the performance of these public duties is recited and re-enacted in the statute of the commonwealth, of 1809, c. 108, and the forfeiture for neglect there given. It seems to my mind therefore a necessary conclusion from the premises, that the penalty has been incurred by the respondent.
But it has been argued, that the additional act of 1803, does not repeal the provision of the statute of 1792, which allows six months to the soldier, after notice of enrolment, to 'be provided with arms and equipments, and that as the laws both of the United States and of this commonwealth require that he should appear armed and equipped when called out for military exercise, it would be absurd to enforce his personal appearance within the period which the law allows to him to procure his arms and equipments. This objection would have much weight, were the construction admitted, that the indulgence of six months given by the act of 1792 was continued after the passage of the additional act of 1803. It is true that in the latter statute there are no express words of repeal, but if the view I have taken of the provisions of the different statutes is correct, there is a repugnancy and contradiction between them, which upon the well known principles of law will operate a virtual repeal of the former enactment, so far as it respects the same *193 subject.* [1] It is an established rule, that where several acts are in pari materia, which contain principles inconsistent and rreconcilable with each other in their application, the latter shall stand as expressing the latest intention of the legislature. Authorities are abundant to this point, in elementary writers and in the books of reports. 6 Bac. Abr. tit. Statute, S ; Rex v. Cator, 4 Burr. 2026 ; Harcourt v. Fox, 1 Show. 521 ; Ex parte Caruthers, 9 East, 44 ; Goodenow v. Buttrick, 7 Mass. R. 140 ; Bartlett & al. v. King, 12 Mass. R. 537. Many of the statutes of the commonwealth are subject to the application of this rule and have been construed by it. Such particularly is the case in reference to the statute of 1788, c. 65, § 6, and of 1817, c. 143, upon the subject of rescue and pound breach. But it is answer ed, that the statute of 1803 upon the subject of the militia, taken in connexion with the previous statute, may be construed in such manner as to refer the provision, which requires that the citizen shall be constantly provided with arms from and after his enrolment, to the expiration of the time within which by the first act he was to be so provided ; and stress is laid upon the words, “ agreeably to the directions of the said act,’'’ (meaning the first act,) used in the addition al statute. But it is apprehended, that this relative expression refers only to the manner of being armed, that every citizen shall be provided with a musket, bayonet &c., agreeably to the directions of the said act, and does not respect the time in which he shall be so provided. This interpretation of the meaning of the legislature results from an examination of the whole section, and is consistent with the obvious rules of construction. The requirement of law, although expressed in somewhat different words, is, that every citizen shall be constantly provided with arms &c. immediately after his enrolment, of which any warning to train shall be sufficient notice. I do not perceive the force of the objection, that this construction would be unreasonably severe. There seems to be nothing more unreasonable in requiring the soldier to be *194 provided upon notice of his enrolment, than in six months afterwards. The law points out to him his duty. It requires that at the period of eighteen years of age he shall be enrolled. This period may as well be anticipated, as provided for after it arrives. The obligation is plainly expressed. Every individual may determine for himself whether he is of the description of persons mentioned in the law. He knows his own age, and can seasonably be prepared for the liability which is imposed upon him for the highest and most important public purpose, that of the security and defence of the nation. Il he neglects, it must be upon a presumption of impunity arising from the neglect of others, of the officer whose duty it is, that he may not enrol him, or subsequently that he may not be summoned to the discharge of military service. He can never be surprised into the exaction of a forfeiture, because it must at all times be in his power to know his liability and to be prepared to meet it. The argument derives strength from considering the right of every enrolled soldier to vote in the election of officers, and his liability expressly declared to detachment from the militia in case of invasion. Indeed all the provisions of law regard the right of the government to the active service of the soldier at the age of eighteen, and upon a construction of the statutes which should dispense with the obligation of the citizen to service for six months after this period, it would be difficult to justify a claim to the person of the adult who should remove from the company of his original enrolment and come to reside within the limits of another. The language of the statute is alike applicable to the condition ot those who from time to time shall arrive at the age of eighteen, and of those, who being of the age of eighteen and undei the age of forty-five, shall come to reside within the bounds of a company. And if it shall be adjudged, that instead of an immediate obligation to be provided with arms, and a liability to personal attendance upon notice of enrolment, the soldier may avoid these duties for six months thereafter, to my mine' it seems a necessary consequence, that by a convenient ant timely removal of residence from year to year, he may es cape the performance of military service altogether.
*195 It has not been without much reluctance that I have found "myself constrained in this case to dissent from my senior brethren of the bench. An entire respect for their more mature and experienced judgment will ever induce me to hold in great distrust nay own opposing opinion. But having investigated the subject, and wdth care again and again reviewed it, the obligation to fidelity in office requires me to express this result.
Parker C. J., after these opinions were delivered, expressed a decided opinion, that the six months’ indulgence was applicable to the first enrolment only ; and intimated that where the age of the party coming into the bounds of a company, and other circumstances, would justify the presumption, it probably would be presumed, that what the law requires had been done in the company from which he came. He also stated that he considered the main question to have been decided twelve years ago, in the case of Commonwealth v. Annis.

Petitioner takes nothing by his petition.

 King v. Middlesex, 2 Barn. & Adol. 818; Commonwealth v. Cromley, l Ashmead, 179.