Commonwealth *v.* William B. Mann, Prothonotary, Appellant.

Commonwealth *v.* William G. Shields Register of Wills, Appellant.

Commonwealth *v.* James W. Latta, Clerk of Court of Quarter Sessions, Appellant.

Commonwealth *v.* Thomas Green, Recorder of Deeds of Philadelphia County, Appellant.

*Public officers — Fees — Acts of March* 10, 1810, *April* 5, 1842, *and March* 31, 1876—*Statutes—Repeal.*

Where a new statute on the same subject embraces provisions similar to those of the old statute for its enforcement, elaborates them, and introduces a more complete system, with a wholly different purpose, the new statute repeals the old statute.

The act of March 31, 1876, P. L. 13, providing that the fees of county officers shall be paid into the county treasury, and that the officers shall be paid by salaries, repeals the act of March 10, 1810, 5 Smith's Laws, page 105, and its supplement, the act of April 5, 1842, P. L. 236, by which in the county of Philadelphia such fees, after deduction of expenses, were divided between the officers and the commonwealth.

In construing statutes applicable to public corporations the courts will attach no slight weight to the uniform practice under them, if this practice has continued for a considerable period of time.

Argued April 29, 1895. Appeals, Nos. 16, 17, 18 and 19, May T., 1895, by defendants, from judgment of C. P. Dauphin Co., Jan. T., 1891, Nos. 490, 491, 492 and 493, on appeals from tax settlements. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeals by defendants to the court of common pleas of Dauphin county from settlements made by the auditor general and state treasurer on Sept. 24, 1894, charging said defendants with fifty per cent of the fees of their several offices in excess of the salaries of said officers and the amount paid by them for clerk hire.

The cases were tried before SIMONTON, P. J., from whose opinions the following facts appeared:

The defendant, William B. Mann, was, during the year 1893, prothonotary of the courts of common pleas of Philadelphia, and as such received during said year for fees of office the sum of $67,906.06; his salary for said year was $10,000; and his clerk hire was $51,625. The amount of these two sums, deducted from the gross amount of fees received, leaves a balance of $6,281.06; one half of which is claimed by the commonwealth, and charged against defendant in the settlement appealed from.

The defendant, William G. Shields, was during the year 1893 register of wills in and for the county of Philadelphia, and as such received during said year for fees of office the sum of $88,432.22. His salary for said year was $5,000, and his clerk hire was $29,373.12. The amount of these two sums deducted from the gross amount of fees received leaves a balance of $54,059.10, one half of which, being $27,029.55, is claimed by the commonwealth and charged against defendant in the settlement appealed from.

The defendant, James W. Latta, was during the year 1893 clerk of the court of quarter sessions of Philadelphia county, and as such received during said year for fees of office the sum of $86,065.87. His salary for said year was $5,000, and his clerk hire was $16,900. The amount of these two sums, deducted from the gross amount of fees received, leaves a balance of $64,165.87, one half of which, or $32,082.94, is claimed by the commonwealth and charged against defendant in the settlement appealed from.

The defendant, Thomas Green, was during the year 1893 recorder of deeds in and for the county of Philadelphia, and as such received during said year for fees of office the sum of $99,091.95. His salary for said year was $10,000, and his clerk hire was $77,700. The amount of these two sums, deducted from the gross amount of fees received, leaves a balance of $11,391.95, one half of which, being $5,695.97, is claimed by the commonwealth and charged against defendant in the settlement appealed from.

The court entered judgment for the commonwealth in each of the cases.

*Errors assigned* in each of the cases were in directing judgment for commonwealth.

*J. W. Catharine, James Alcorn,* assistant city solicitor, and *F. Carroll Brewster, John L. Kinsey,* city solicitor, with them, for appellants.—The fifty per cent charged by the act of 1810 is not what is technically called a tax. It was charged against the officer: Cohen v. Com., 6 Pa. 111.

The act of 1876 was passed to carry out section 5, article 14 of the constitution. The constitutional provision only refers to fees of officers. It does not refer to taxes due the commonwealth. The exception of taxes due the commonwealth, under the act of 1876, it is submitted, was overcaution, and such taxes could never have been meant by the first part of section one of the act.

The act of 1876 is a general act, as it refers to all counties. The act of 1810 is also a general act. Section 18 of the act of 1876 provides that all laws or parts of laws inconsistent with this act are hereby repealed, etc. A general law repeals by implication another general law with which it is inconsistent, but here are express words of repeal, so that the act of 1810, as far as the fifty per cent of the fees is concerned, must be repealed by the act of 1876; the two acts being in that respect inconsistent.

The best exposition of a statute or any other document is that which it has received from contemporary authority : Endlich on Int. of Statutes, 357; Potter's Dwarris on Statutes, 179; Edwards v. Darby, 12 Wheat. 210; U. S. v. The Recorder, 1 Blatchford, C. C. R. 218.

*Benjamin M. Nead, John P. Elkin,* deputy attorney general, and *Henry C. McCormick,* attorney general, with him, for appellee.—Without the act of 1810 there is nothing to indicate what the legislature meant

By the "fees levied for the state, which shall be to and for the use of the state," in the first section;

By the "fees otherwise belonging to the state" in the ninth section;

By the "fees, mileage or perquisites," other than compensation of the officer, "required to be paid to the state," in the fifteenth section;

By the provision about the "net receipts" in the last clause of the sixteenth section;

Without the act of 1810, all of those provisions must be read out of the act of 1876, otherwise it would be inconsistent with its own terms.

The act of 1810, being necessary to the intelligent consistence of the act of 1876, can in no wise be repealed by that act, either directly by the meaningless repealing clause at the close, as has been contended, or impliedly, through repugnancy.    The " two statutes can stand together," therefore " the posterior does not abrogate the prior: " Erie Co. v. Bootz, 72 Pa. 196 ; Contested Election of Barber, 86 Pa. 392.

The act of 1810 is not inconsistent with the act of 1876, because the latter act fixes a different and a greater salary for the county officer.

#### COMMONWEALTH v. MANN.

OPINION BY MR. JUSTICE DEAN, May 20, 1895 :

It is, perhaps, doubtful whether the party defendant in this case should not have been Philadelphia county ; but as the county agreed with defendant to be answerable, in the event of an adverse judgment, he waived his right to object that a suit could not be maintained against him ; therefore, we shall consider the case, as raising the question whether either is answerable.

Before the passage of the act of March 10, 1810, the fees of this officer all belonged to him, and out of them he paid the expenses of his office.   On that date, however, was passed an act entitled " An act taxing certain offices."   The first section of the act directs that, with other county officers, the prothonotaries of the courts of common pleas of the commonwealth, " Shall, from and after the first day of October next, keep or cause to be kept a fair and accurate account of all the fees received for services performed by them or any person employed by them in their respective offices; and shall annually thereafter furnish a copy of such account upon oath or affirmation to the auditor general ; . . . . and whenever the amount of any of the said accounts shall exceed the sum of fifteen hundred dollars, the auditor general shall charge the said officers respectively fifty per cent on the amount of such excess ; which sum so charged shall be paid by them into the treasury for the use of the commonwealth."

Under this act, the state took one half of the aggregate fees, in excess of $1,500, without any deduction by the officer for clerk hire, stationery, or other expenses incident to the performance of the duties of the office ; but by the act of 5th of April, 1842, the officer, in addition to the $1,500, was authorized to deduct these expenses and the state took only one half the remainder. It will be noticed, that the acts of 1810 and 1842 were general acts applicable to every county in the commonwealth. But, by act of April 2, 1868, they were repealed as to all counties except Allegheny, Lancaster, Montgomery, Philadelphia, Beaver, and Washington; so that, as to Philadelphia, the act of 1810, as qualified by the act of 1842, remained in force. The next general legislation on the subject is the act of 31st of March, 1876, passed, as declared in the title : " To carry into effect section five of article fourteenth of the constitution, relative to the salaries of county officers, and the payment of fees received by them into the state or county treasury in counties containing over one hundred and fifty thousand inhabitants."

The first section enacts : " That in all counties in this commonwealth containing over one hundred and fifty thousand inhabitants, all fees limited and appointed by law to be received by each and every county officer therein elected by the qualified voters of their respective counties, or appointed according to law, or which they shall legally be authorized, required or entitled to charge or receive, shall belong to the county in and for which they are severally elected or appointed." This is the first thought or intent of the act; all fees which the officer shall be authorized, required or entitled to charge or receive, shall belong to the county ; not one half the fees, over fifteen hundred dollars and expense, but all the fees. There can be no question as to the meaning ; they were such fees as had been received by him before the act of 1810, all of which he kept as his own ; those received afterwards, $1,500 of which, and half over that amount, he kept as his own ; those received after 1842, when in addition he kept as his own an amount equal to his office expenses ; all he was " entitled to charge or receive " now belong to and must be paid to the county. Is this manifest purpose qualified by the language which follows in the same section ? " And it shall be the duty of each of said officers to

exact, collect, and receive all such fees to and for the use of their respective counties, except such taxes and fees as are levied for the state, which shall be paid to and for the use of the state." When it is remembered, that the act put all county officers in counties of over one hundred and fifty thousand inhabitants in the salaried list, the purpose of the introduction of the words, " except such taxes and fees as are levied for the state," is obvious. Taxes levied for the state on personal property and other objects of taxation are paid to the county treasurer ; liquor license fees are also paid to him ; the tax on probate of wills, recording of commissions, and the collateral inheritance tax, levied for the state, are paid to the register of wills and the recorder ; the tax levied by the act of 1830, on writs for the state, is received and paid over by the prothonotary ; and the state might, for economy and convenience, direct that other taxes levied for its use should be paid to these or other county officers, for transmission to the state treasury; hence, the necessity for this exception ; but to our mind, it neither qualifies, nor was it intended to qualify, the previous declaration, that all fees the officer was entitled to charge or receive, as a county officer, should belong to the county.

The second section of the act then prescribes how the account of fees shall be kept, and directs that, on the first Monday of each month, the officer shall pay to the county treasurer " all fees so received during the preceding month," and " he shall make oath . . . . that the said transcript contains a true and correct list of all the fees received, earned or chargeable upon the county for services rendered in his office, either by himself, deputies or clerks during the preceding month." Thus, the act still assumes, in accord with the first section, that all the fees pertaining to the office belong to the county, and must be paid by him to the county.

The third and fourth sections declare it a misdemeanor in the officer to neglect to keep accounts, to make returns, or pay over the money, to swear falsely; to neglect to charge fees according to law.

The fifth section enacts, that the officers, their deputies and clerks shall be paid specific salaries, and these shall be paid monthly from the county treasury.

The sixth section provides that the salary of the officer shall

only be paid out of the aggregate of the fees paid into the treasury by him the preceding months, after deducting the amount due deputies and clerks, and if there be not enough left to pay him, then, he shall get only the aggregate of net fees received; but also providing, if there be any excess in subsequent months, the deficit shall be made up from the excess during his term. His compensation cannot be greater than the aggregate of net fees during the term.

The seventh and eighth sections relate to the determination of the number of deputies and clerks, and the fixing of their salaries.

The ninth section provides, that " each of said officers shall make a separate return to the state treasurer of all collateral inheritance taxes collected or earned for the state by him, if any have been so collected or earned, and of all taxes due the state on any writs or legal proceedings or fees otherwise belonging to the state collected or earned by him, and the amount so returned by any of said officers as received by him for the state, shall be separately paid into the state treasury quarterly."

The tenth section provides for access to the books and accounts by the proper officers.

The eleventh directs, that the county, at its own cost, shall provide office furniture, books and stationery.

The twelfth, thirteenth, and fourteenth specifically fix the salaries of the officers.

The fifteenth is a repetition of the first, somewhat elaborated.

The sixteenth and seventeenth sections, declare certain offices county offices, and provide for the quarterly payment of the officers.

The eighteenth and last section, having in mind the fact, that existing laws provide for entirely different means of compensation of county officers, as well as wholly different methods of accounting, directs that: " All county officers affected by it shall settle their accounts under existing laws," up to the expiration of the term of the then incumbents.

We have noticed these different sections of the statute, because they show another scheme, covering all possible phases of the subject embraced by the act of 1810. The act of 1876 takes up the same subject, and by more, as well as more elaborate provisions, undertakes to specifically designate the owner-

ship of the fees, the duty of the officer and the limitation on his salary.

The case turns on the question, whether the acts of 1810 and of 1876 can stand together; they are both legislation on the same subject; both affirmative statutes. This is not exactly the case of a new statute repealing an old one in whole or in part, because of repugnancy; it is a new statute on the same subject, embracing provisions similar to those of the old, for its enforcement; elaborating them, and introducing a more complete system, with a wholly different purpose. Theretofore, the commonwealth had title and right to half the money beyond certain deductions; the officer had title to the other half; he collected and accounted to the commonwealth for her share; she now relinquishes her title to any part, and by unmistakable language, deprives the officer of all title; vests the whole in the county; constitutes the officer the mere channel through which it reaches the declared owner, the county. We are far from intending to infringe on the well settled rule, that a later statute on the same subject will not repeal an older one by implication, unless they be plainly repugnant. But if a statute embrace the essential provisions of an antecedent one on the same subject, and formulate a new system, the intention that the new shall be a substitute for the old is manifest, although there be no expressed intention to that effect. It is so held in Commonwealth v. Cromley, 1 Ash. 179; Goodenow v. Buttrick, 7 Mass. 140; Commonwealth v. Cooley, 10 Pick. 39; Johnston's Estate, 33 Pa. 511, and many other cases.

The constitutional and legislative intention to introduce an entirely new system, as to fees collected by county officers in the large counties, is just as manifest as it was to introduce in Philadelphia a new system as to aldermanic or magistrate's fees. Section 12 of article V. says: " In Philadelphia . . . . they (magistrates) shall be compensated only by salaries to be paid by said county . . . . All fees, fines and penalties in said courts, shall be paid into the county treasury." As to county officers, the same thought is expressed: " All county officers shall be paid by salary," and they "shall pay all fees which they may be authorized to receive into the treasury of the county or state, as may be directed by law." Then as to the latter came the directions of the law: " All fees limited and

appointed by law to be received by each and every county officer . . . . shall belong to the county," with no retransfer of the right to any portion to the commonwealth.

In answering this question, it is proper to have in mind the circumstances which moved the legislature, in 1876, to pass any law on that subject.

The section of the constitution referred to in the title peremptorily directed that: "In counties containing over one hundred and fifty thousand inhabitants, all county officers shall be paid by salary; and the salary of any such officer and his clerks heretofore paid by fees shall not exceed the aggregate amount of fees earned during his term, and collected by and for him." The same section directed that: "All county officers who are or may be salaried, shall pay all fees which they may be authorized to receive, into the treasury of the county or state, as may be directed by law." Then, immediately following in section six of the same article, is this injunction: "The general assembly shall provide by law for the strict accountability of all county, township, and borough officers, as well for the fees which may be collected by them, as for all public or municipal moneys which may be paid to them." The subject of section six, being so palpably the same as that of section five, it is scarcely separable in thought, and may fairly be treated as part of it.

The purpose of the act of 1876, as disclosed in its title, was to obey the mandate of the constitution. 1. All county officers in counties containing over one hundred and fifty thousand inhabitants, must be paid by salary; no longer by fees. 2. The salary was limited; it must not exceed the aggregate amount of fees earned during the term, and collected by or for them. 3. They must not keep any part of such fees, and credit them on salary, but must pay over all of them into the treasury of the county or state, as may be directed by law. 4. The legislature was to provide by law for a strict accounting by them, not only for all fees collected by them, but for all other public money paid to them.

The act of 1876, following so soon the constitution of 1874, it may be presumed the legislature knew the old law, the mischief or abuses under it, as well as did the members who framed the constitution, and the people who adopted it. The large

compensation of officers paid by fees in large counties, for years before, was felt to be a wrong on the public; though the grievance was not so sore, as farming out the taxes in France before the French Revolution, it was getting to be of the same character; the compensation of the officer and revenues of the state were only limited by the amount of fees the officer could wring from unfortunate litigants. He had every temptation to pile up fees, and then extort them; as the commonwealth halved the money with him, it made no rigid inquiry as to how he got it; individuals were practically defenseless, for lawyers were averse to incurring the displeasure of the officer by resisting illegal exactions from their clients. It is difficult, for those who have come to the bar since, to realize the abuses of the fee system in large counties before that time. But the convention of 1873 understood the matter, and so did the legislature of 1876. The latter, aware of the mischief, was in full sympathy with the convention in legislating the remedy; and in that spirit was framed the act of 1876.

The legislative intention was to sweep away, as directed by the constitution, a pernicious system, by removing, as far as possible, all motive for illegal exactions. It in no way affects the force of the mandate, that it embraces only counties containing over one hundred and fifty thousand inhabitants; the evil, at the adoption of the constitution, was only serious (or thought to be so) in counties of large population. When, as to such counties, the legislature, as part of a new system, declared "all fees," which the county officers were "entitled to charge or receive shall belong to the county in and for which they were severally elected or appointed," it meant, and could only mean, all the fees pertaining to the county office, and which, from the character of the office, the incumbent earned and received. It did not mean one half the fees, over and above a certain amount, or the act would have said so. It did, by exception, save fees and taxes specially levied for the state, but the language of the exception seems to carefully guard against affecting the scope of the words first used: " And it shall be the duty of each of said officers to exact, collect and receive all such fees to and for the use of their respective counties, except such taxes and fees as are levied for the state." This would have been but little more significant if it had said

" except collateral inheritance taxes, state tax on writs, wills, commissions and license fees." And that this is the meaning, is obvious from the provision in section nine; section two had required the officer to keep a special account of all the money received for fees, and pay all the moneys so received monthly into the county treasury, but outside of these fees payable to the county monthly, were other moneys not belonging to the county; so this section directs, the officer " shall make a separate return to the state treasurer of all collateral inheritance taxes . . . . all taxes due the state on any writs or legal proceedings, or fees otherwise belonging to the state," and these shall be paid by him into the state treasury quarterly. He was to account to the county, and pay over, monthly; to the commonwealth, quarterly.

Then comes the last section, which assumes the act is a substitute for prior legislation, by directing that it shall take effect only on the expiration of the terms of those then in office, and they shall settle their accounts under the old system up to that date.

We are of opinion that the act of 1876, as to Philadelphia county, that county having over one hundred and fifty thousand inhabitants, was intended as a substitute, in its application to county officers, for the act of 1810, and that the latter, of necessity, was repealed by it; that, by the act of 1876, all the fees which the defendant, as prothonotary, was entitled to charge or receive, belonged to the county.

It is argued by the learned attorney general, with some force, that this construction of the act of 1876 tends to inequality, because large counties will have the whole excess revenue derived from fees, while the officers in the smaller counties will continue to contribute a share to the commonwealth's treasury. But this inequality is more apparent than real. The larger county becomes answerable, under the act, for all the expenses of the office and all salaries; the nearness of the county to the officer, it having a voice in determining, not only the number of deputies and clerks, but their salaries; and having, to a large extent, control of the expenses, there is established a motive to watchful, economical supervision. Besides, the fact is well known, that litigation tends towards the larger counties. Our courts are courts of the commonwealth ; corporations and

large business concerns have offices in the large counties, and can there be easily served with process; there, in personal actions, where the cause has arisen in other counties, suits are often brought and determined.   Consequently, the expense of maintaining courts, outside of that which is reimbursed by fees, is heavier in such counties, and the legislature may have thought it but right to relinquish the commonwealth's claim on a share of the fees.   But whatever may have been the motive, the legislature, in so doing, had the power to, and, by no uncertain words, did give up to the county what before the act of 1876 the commonwealth had claimed.

While we do not think this interpretation of the act of 1876 at all doubtful, so as to require the aid of contemporaneous construction, the fact that the same construction has been given it, from the time it became a law, for nearly twenty years, by all whose duty it was to construe it, or who were affected by it, is worthy of notice.   In speaking of contemporaneous exposition of a statute, Judge ENDLICH, in his valuable work on Statutes, sec. 357, says: "But, further, the meaning given by contemporary or long professional usage (to a statute) is presumed to be the true one, even when the language has etymologically or popularly a different meaning.   Those who lived at or near the time when it was passed, may reasonably be supposed to be better acquainted than their descendants with the circumstances to which it had relation, as well as with the sense then attached to legislative expression."   And further on in the same section, he says: " It often becomes, therefore, material to inquire what has been done under an act; this being of more or less cogency, according to circumstances, for determining the meaning given by contemporaneous exposition."   And for the text, he cites many authorities, both in this country and England.   And, further, in note to same section, " In construing statutes applicable to public corporations, courts will attach no slight weight to the uniform practice under them, if this practice has continued for a considerable period of time."   In the case before us, as is intimated by the learned judge of the court below, the construction given to the act by the officers or county to be charged, in their own interest, is not entitled to much weight; but, when that construction has been acquiesced in by the commonwealth, from the date of the act until the institu-

tion of this suit, if the construction were doubtful, this would have much weight. The many auditor generals, attorney generals and state treasurers, whose sworn duty it was through all these years to see that the revenues of the state were accounted for and paid over, were grossly neglectful in not exacting payment, if the act of 1810 were still in force. It would be highly unjust to impute to them such neglect; evidently they considered, and rightly so, the act of 1810 repealed by the act of 1876, on the expiration of the term of those then in office; the contemporaneous exposition of the act, and the long uniform practice under it, show that, in their opinion, it took the place of the old act, and that neither the county officer nor the county was longer answerable for one half the excess of office fees, for all were declared to belong to the county.

The appeal is sustained, and the judgment is reversed.

### COMMONWEALTH v. SHIELDS.

OPINION BY MR. JUSTICE DEAN, May 20, 1895:

For the reasons given in Commonwealth v. William B. Mann, prothonotary of court of common pleas of Philadelphia county, the appeal in this case is sustained and the judgment is reversed.

### COMMONWEALTH v. LATTA.

OPINION BY MR. JUSTICE DEAN, May 20, 1895:

For the reasons given in Commonwealth v. William B. Mann, prothonotary of court of common pleas of Philadelphia county, the appeal in this case is sustained and the judgment is reversed.

### COMMONWEALTH v. GREEN.

OPINION BY MR. JUSTICE DEAN, May 20, 1895:

For the reasons given in Commonwealth v. William B. Mann, prothonotary of court of common pleas of Philadelphia county, the appeal in this case is sustained and the judgment is reversed.