## ELLIS v. HOLCOMBE et al.
### No. 10104.

Court of Civil Appeals of Texas. Galveston. Feb. 22, 1934.

Rehearing Denied March 21, 1934.

James E. Kilday, of Houston (Ben Campbell, of Houston, of counsel), for appellant.

R. R. Lewis, Sewall Myer, and W. M. Holland, all of Houston, for appellees.

PLEASANTS, Chief Justice.

This is a suit brought by appellant against appellees, the mayor, and the civil service commission for the city of Houston, for an injunction, and mandamus to obtain a hearing by the civil service commission of an appeal by appellant from an order dismissing him from employment by the city as superintendent of the identification bureau of the police department of the city.

The petition, to which a general demurrer was sustained by the trial court, is necessarily lengthy but its allegations will not be copied in full, since it is only necessary for the decision of this appeal to set out the substance of the allegations which, in our opinion, show a cause of action.

It alleges in substance that appellant was employed by the city in 1929 as an expert in making identification of persons charged with crime, and filing and keeping in order the identification records of the police department of the city. At the time of appellant's employment the charter of the city, by an amendment thereto which was adopted in 1913, created and established a civil service commission, composed of three resident citizens to be appointed by the mayor and confirmed by the city council, one of whom should be a member of the city council, and all over the age of 25 years.

The members of the commission receive no pay and hold office for a term of two years. Any vacancy from any cause must be filled by the Mayor with the approval of the council. The commission, with the approval of the city council, is authorized to make the necessary rules and regulations for the conduct of its business.

The charter expressly directs that:

The civil service commission "shall provide for the classification of all employees eligible to civil service, except day laborers, and of all officers and appointees, including peace officers and firemen, except the heads of departments now existing or which may be hereafter created by City Council, and the officers and appointees hereinafter named: The City Attorney and his assistants; City Tax Attorney, if there shall be one; City Engineer; Tax Assessor and Collector; Chief of Police; Chief of Fire Department; Fire Marshal; Purchasing Agent; City Health Officer; City Pathologist; City Scavenger; and all of the chief clerks of any and all departments of the city government, and the members of all the boards created and appointed by the Council shall not be subject to civil service rule; provided, however, that the naming of particular departments and the heads thereof as hereinbefore given shall not be exclusive

of other departments that now exist, or that may be hereafter created by the Council, and no head of any department, nor his chief clerk, shall be subject to civil service rule. The Civil Service Commission shall also make provision for open, competitive and free examination as to the fitness in regard to classified services for an eligibility list from which vacancies shall be filled, for a period of not less than 12 months' probation before being placed upon the classified list of appointees or employees and for promotion on the basis of merit, experience and record.

"Employees of the city who may at the time of the adoption of this Article be in the actual service of the city shall retain their respective positions unless removed by the Mayor and City Council under the provisions of this Charter, until placed on the classified list after having served their probation.

"The City Council may by ordinance confer upon the Commission such further and additional rights and duties as may be deemed necessary to enforce and carry out the principles of this Article."

In compliance with the charter provisions each succeeding mayor since the adoption of the amendment has, with the approval of the city council, appointed members of the civil service commission, and such commission has at all times since its establishment been one of the governmental boards of the city. The commission, with the approval of the city council, has adopted and promulgated rules for the conduct of its business. These rules were all observed in the appointment of appellant in 1929 to the position he is now seeking to retain, and he has been carried on the classified list of civil service employees in accordance with the directions of the charter before quoted, and rules adopted by the commission. Section 1, rule 1, of the commission classifies all employees subject to civil service into classes, grades, and groups. Within each class there are grades "having duties of substantially similar authority, importance, and responsibility." Within each grade there are groups being similar as to compensation and length of service. Class D includes the police department. The appellant's position, with others in the same grade, is thus listed by the commission in grade 3 of class D: "Position of Warrant Officer, First Grade Sergeant, Lieutenant of Police, Captain of Police, Supervisor of Identification."

Shortly after the qualification of appellee

mayor for his present term he, with the approval of the city council, reorganized the city governmental plan by combining the various departments of the city government into four larger departments, each headed by a director appointed by the mayor and confirmed by the council.

The police department under this reorganization was put under control of Mr. George E. Woods, director of public safety. Soon after Mr. Woods' appointment he sent the appellant the following letter:

"Houston, Texas, May 1, 1933.
"Mr. W. R. Ellis,
"Police Department,
"Houston, Texas.
"Dear Sir:
"On account of the condition of the City's finance, it is necessary for me to relieve you from service effective today.

"It is with regret that this step was necessary, but the Police Division of the Department of Public Safety must get within its budget immediately.

"Yours very truly,
"[Signed]  Geo. E. Woods,
"Director, Department of Public
Safety."

Upon receiving this letter of dismissal appellant within the time fixed by the charter and in compliance with the rules of the civil service commission filed his appeal with the commission from the order of dismissal, in which he expressly stated that he was willing to perform the duties of his position for the salary which was being paid his assistant, who had been promoted to appellant's position. After this appeal was filed the mayor sent the following letter to appellant:

"Houston, Texas, May. 6, 1933.
"Mr. W. R. (Bobby) Ellis,
"c/o James E. Kilday,
"2223 Gulf Building,
"Houston, Texas.
"Dear Sir:
"You were relieved from your duties as Superintendent of the Identification Bureau by Mr. George E. Woods, Director of Public Safety, under my instructions.

"You are hereby dismissed from the service of the City as of May 2nd, 1933. This action is taken by me under authority vested in me by Section 2, Article No. 5, of the City Charter.

"Yours very truly,
"[Signed]  Oscar F. Holcombe,
"Mayor."

452

Upon receipt of this letter appellant filed supplemental appeal asking relief against both orders of dismissal.

The civil service commission has declined to act upon this appeal, presumably under the view expressed by the trial judge in sustaining a general demurrer to appellant's petition, to the effect that the civil service provisions of the charter of the city do not repeal or limit the power of the mayor contained in other provisions of the charter to discharge civil service employees without cause, and gives no right of appeal to the civil service commission from the exercise of such power by the mayor.

The only proposition presented in appellees' brief in answer to appellant's brief is: "The trial court did not err in sustaining the general demurrer to appellant's second amended petition, for the reason that under the Charter of the City of Houston and Laws of the State of Texas, the Civil Service Commission of the City of Houston is without authority or power to grant or hear appeals from the discharge of a city employee where such discharge or removal was made by the Mayor of the City of Houston."

Upon this state of the record the only question we are called upon to decide in disposing of this appeal is whether the provisions of the charter as a whole can be interpreted as placing no restriction upon the authority of the mayor to discharge at will and without cause any or all of the employees of the city who are classified and listed as being under the civil service provisions of the city charter.

We cannot bring ourselves to believe that there is any rule of law, or dictate of reason, which requires such interpretation to be placed upon the provisions of the charter.

In support of their proposition above stated, appellees cite and rely upon the well-settled salutary rule of decision that repeal of an existing statute by implication is never favored, and a repeal should only be implied when the conflict between the later and former statutes is so positive that the purpose to repeal is manifest. The antagonism must be so pronounced that both statutes cannot stand. "Though they seem to be repugnant, if it is possible to fairly reconcile them such is the duty of the court. A construction will be sought which harmonizes them and leaves both in concurrent operation, rather than destroys one of them. If the later statute reasonably admits of a construction which will allow effect to the older law and still leave an ample field for its own operation, a total repugnance cannot be said to exist, and, there-

fore, an implied repeal does not result, since in such case both may stand and perform a distinct * * * office."

This statement of the rule is taken from the case of Cole v. State ex rel. Cobolini, 106 Tex. 472, 170 S. W. 1036, the first case cited by appellees, and one of the clearest opinions discussing and applying the doctrine of repeal by implication.

It seems clear to us that when this rule is applied to the conflicting provisions of the city charter, which we will presently set out, there is such positive repugnance between the provisions of the civil service amendment and those contained in the charter prior to that amendment, which permitted removal of any appointed employee of the city by the mayor or city council, without cause, that the amendment must be held to supersede or repeal the authority of the mayor and council to so remove or discharge employees classified and protected by the civil service amendment.

The provisions of the city charter under which appellees contend that the mayor and city council have authority to remove any employee of the city at will, notwithstanding the provisions of the civil service amendment, are the following:

Section 2, art. 5, of the charter: "Appointive Officers—The Mayor shall have power to appoint, subject to confirmation by the City Council, such heads of departments in the administrative service of the city as may be created by ordinance, and shall have power to appoint and remove all officers or employees in the service of the city for cause, whenever in his judgment the public interests demand or will be better subserved thereby; and no officer whose office is created by ordinance shall hold the same for any fixed term, but shall always be subject to removal by the Mayor or may be removed by the City Council. In case of such removal, if the officer or employee so removed requests it, the Mayor or City Council, as the case may be, shall file in the public archives of the city a written statement of the reason for which the removal was made."

Section 8, art. 7, of the charter: "The City Council shall, consistent with the provisions of this act, have power to establish any office that may in its opinion be necessary or expedient for the conduct of the city's business or government, and may fix its salary and define its duties; provided, however, that all offices established by the Council shall be subject to discontinuance or be abolished by the Council at any time, and any incumbent of

any office, except the Controller, may be removed at any time by the Mayor, with or without the concurrence of the Council; and in no case shall any officer or employee of the city be entitled to receive any compensation or emolument of any office which may be abolished, or from which he may be removed, except for services rendered to the date when the office was abolished or the incumbent removed."

Section 6, art. 9, of the charter: "All elective officers elected at the last regular city election, except the Mayor, Aldermen and City Attorney, unless sooner removed by the Mayor or City Council for cause, shall retain their offices and receive the pay at present provided, until two years have expired from and after the date of their election and qualification in April, 1904.

"All appointive officers, or all officers whose positions are created by charter or ordinance, not elected by the people, shall hold their offices and continue in the service of the city subject to the will and pleasure of the Mayor."

Appellees cannot invoke section 2, art. 5, in support of the mayor's authority to discharge appellant for cause because the facts pleaded by plaintiff show that appellant was not discharged for cause. It is true the letter discharging appellant recites that appellee mayor is acting under the authority conferred upon him by section 2, art. 5, of the charter, but he gives no intimation of the cause further than may be inferred from the statement that Director Woods in his letter of May 1st, removing appellant, was acting under the mayor's instructions. Mr. Woods' letter shows on its face that there was no cause of complaint of appellant's discharge of the duties of his office, or that he was in any way unfit or unworthy to fill his position; upon the contrary, it expresses the regret of the director that the removal of appellant was necessary in order to reduce the expenses of the department.

It was only after appellant had appealed from his dismissal by Woods that the mayor sent his discharge letter before mentioned.

██ The allegations of appellant's petition are in substance that the only cause or reason for his discharge by the mayor was to give appellant's position to his assistant, who had supported the mayor in the election which returned him to office in 1933. It was human for the mayor to prefer his political friend for any position of employment by the city at his disposal, but such human interest or feeling is certainly no cause for removal of a faithful, efficient public employee protected by the civil service amendment. The necessity for reducing expenses of the department cannot constitute legal or just cause for the removal of appellant for two reasons: First, the rules of the civil service commission adopted with the approval of the city council provide in effect that when it becomes necessary to reduce the number of civil service employees to cut down expenses, such reduction shall begin at the bottom, not at the top. And, second, appellant was and is willing to retain his position at the salary paid his successor, and so informed the director, and states in his appeal to the civil service commission.

The provisions of section 8, art. 7, of the charter are equally unavailing to appellees as authority for the discharge of appellant. The provisions of this article, giving the council the authority to abolish any office created by it, and also providing for the removal by the mayor of the incumbent of any office, except the comptroller, with or without the concurrence of the council, and that in no case shall any officer or employee of the city be entitled to receive any compensation or emolument of any office which may be abolished or from which he may be removed, except for services rendered to the date when the office was abolished or the incumbent removed, are only in conflict with the civil service amendment in further authorizing the mayor to discharge any officer or employee of the city at will. When an office is abolished, as provided in article 7, the incumbent of the office and his employees are clearly not entitled to the emoluments of the office or to any compensation for services rendered after the office is abolished. This is the main purpose and intent of the article. If, however, the office is not abolished, the incumbent and his employees are protected by the civil service amendment because the provisions of that amendment are so positively conflicting with the provisions of article 7 for removal by the mayor, that a repeal of such provision must be implied. The term of any office not being otherwise fixed by law is restricted to two years by our Constitution. We think the allegations of appellant's petition show that he is not an officer of the city, but a highly qualified expert employee working in the police department of the city. If he can be classed as an officer of the city, his petition alleges that he was reappointed in 1933, and is therefore protected by the civil service amendment for at least a term of two years.

454

The provision of section 6, art. 9, of the charter to the effect that all appointed officers, or all officers whose positions are created by charter or ordinance, not elected by the people, shall hold their offices subject to the will and pleasure of the mayor, must also be held repealed to the extent indicated by the conflicting provisions of the civil service amendment. In addition to the provisions before set out, that amendment contains the following:

"Sec. 3. Removal of Employees—Any employee *may* be suspended by the head of the department under which he is employed, and thereupon his salary shall cease. The officer making the order of suspension shall forthwith file with the Civil Service Commission a statement of the suspension and his reasons therefor. Within ten days after such suspension the employee so suspended may, if he desires, file an appeal with the Civil Service Commission, who shall hold an inquiry within ten days thereafter, and said Commission shall make a decision within ten days after the hearing whether the employee shall be permanently dismissed from the service of the city or reinstated in his employment. All such hearings shall be public; the decision of the Commission shall be final. In order for an employee to file an appeal as hereinbefore provided it shall only be necessary for him to file a written statement showing in what department he was employed, when and for what he was suspended and a statement by him denying the truth of the matters charged in the statement of the officer so suspending him, and that he desires an appeal from the decision of said officer suspending him, which statement of appeal shall be signed and sworn to by the employee so suspended. In all hearings on appeal from the order of suspension by the Civil Service Commission, the judgment of the officer suspending the employee shall be presumed to be correct; the burden of disproving the charges made against the employee that resulted in his removal shall be upon the employee."

"Sec. 5. Officers, Employees and Appointees Not Under Civil Service—That as to all employees, officers and appointees not under civil service the provisions of the present Charter shall remain in full force as to such appointment, removal, salary, services and duties, unless amended at this or some other subsequent election. (Added by amendment, 1913.)"

It seems clear to us that these provisions of the amendment comprehend the entire subject of removing city employees classified under the civil service amendment, and create an independent and exclusive method for the removal of such employees. The provision of section 5 which in effect limits the former powers of the charter giving authority to the mayor and city council to remove at will all appointive officers and employees of the city, to those not under the civil service provisions of the charter, can only be reasonably construed as showing the intention of the amendment to repeal such former charter provisions as to officers and employees classified under the civil service amendment.

█ The general rule of construction of statutes is thus stated in Sutherland on Statutory Construction, p. 412: "Where authority is given to do a particular thing and the mode of doing it is prescribed, it is limited to be done in that mode; all other modes are excluded. Such affirmative legislation and any other which introduces a new rule imply a negative."

This rule of construction is based upon the legal maxim that the expression of one thing is exclusive of another. When the civil service amendment expressly provides that any of the employees and officers of the city classified under the civil service amendment may be suspended by the head of the department in which he is employed, and further provides that the decision of the civil service commission upon appeal thereto of the employee or officer so suspended shall be final, it prescribes the only method for removal of such employee. This purpose and intention is further emphasized and made clear by the declaration in section 5 of the amendment, which only preserves the power of the mayor and city council to remove officers and employees at will, as to officers and employees not under civil service rules.

This holding as to the effect of the civil service amendment upon former provisions of the charter before discussed is fully supported by the opinion of our Supreme Court in Bryan v. Sundberg, 5 Tex. 418, in which it is said in discussing the question of repeal by implication: "It undoubtedly is true that a construction which repeals former statutes, by implication, is not to be favored; and it is also true that statutes in pari materia, and relating to the same subject, are to be taken and construed together; because it is inferred that they had one object in view, and were intended to be considered as constituting one entire, and harmonious system. But when the new statute, in itself, comprehends the entire subject, and creates a new, entire, and independent system, respecting that subject matter, it is universally held to repeal

and supersede all previous systems and laws respecting the same subject matter. ([Goodenow v. Buttrick] 7 Mass. 140; [Bartlet v. King] 12 Mass. 537, 545 [7 Am. Dec. 99]; [In re Ashley] 4 Pick. [Mass.] 21, 23; [Com. v. Cooley] 10 Pick. [Mass.] 39; [Mason v. Waite] 1 Pick. [Mass.] 452; [Ellis v. Paige] 1 Pick. [Mass.] 43; [Blackburn v. Inhabitants of Walpole] 9 Pick. [Mass.] 97; [Towle v. Marrett] 3 Greenl. [3 Me.] 22 [14 Am. Dec. 206]; [Com. v. Cromley] 1 Ashm. [Pa.] 179.)"

In our opinion the provisions of the civil service amendment clearly evidence that the purpose and intention of the city council in adopting and submitting such amendment to the voters for incorporation in the city charter was to create a new mode or system of selecting employees for appointment to nonpolitical positions in the service of the city by providing that only those found qualified by the civil service commission for the duties of their employment and so classified as directed by the amendment shall be appointed to fill vacancies, and also providing an independent exclusive method for the removal of employees so selected and qualified, and such provisions must be held to supersede all previous provisions of the charter respecting the appointment and removal of such classified employees.

■ Civil service laws and rules respecting the selection and removal of employees of government, whether national, state, or municipal, whose duties are wholly nonpolitical, have as their primary purpose the improvement of such governmental service by making its duration entirely independent of the employees' political views or preferences for candidates for election to office, so long as such employees do not become improperly active and partisan in political elections. With this purpose, as we think, clearly shown by the language of the amendment and by the rules and regulations of the civil service commission, the appellee mayor was without authority to discharge appellant, and the civil service commission should proceed to hear and act upon appellant's appeal. We are wholly unable to agree with appellees' contention that the council in adopting the civil service amendment, and the voters of the city in ratifying that amendment, only intended to restrict heads of departments of the city government from removing at will employees classified and protected by the civil service amendment, and did not intend to protect such employees from removal at the will and pleasure of the mayor or city council. Such a civil service system would in our opinion be farcical, and defeat the primary purpose of the amendment.

The partisan claim that "to the victors belong the spoils," which originated after the election of Andrew Jackson to the office of President, and which at that time may have been entirely proper and reasonable in view of the entrenched position of the Federalist or Whig Party, and the partisan activities of the employees of that party against General Jackson's candidacy, has long since been modified by civil service legislation approved by the great leaders of both of the great political parties in our Union of States, which in effect declare that the nonpolitical position of any employee of our government shall not be regarded as "spoils" belonging to the successful party candidate. The justice and wisdom of such civil service legislation is apparent, and is generally so recognized. These laws and regulations accord to such employee the full privilege of exercising his right and duty of citizenship to cast his vote in accordance with his honest convictions of what is best for his community, state, or nation, but forbid him to become an active partisan in any political contest. Such laws not only tend to promote efficiency in the public service, but prevent the organization by office holders of an army of workers to secure their re-election, or the continuance in office of the representatives of any political party.

■ There can be, we think, no doubt of the availability of the writs of mandamus and injunction, if necessary to secure appellant a hearing on his appeal. We cannot believe, however, that it will become necessary for either of such writs to issue. Appellees have the right, and we presume will apply to our Supreme Court for a writ of error from our decision of the fundamental questions of the mayor's authority to discharge appellant and of the appellant's right to appeal therefrom to the civil service commission.

In event appellees' contention should be sustained by the Supreme Court, the judgment of the trial court will be affirmed. If our conclusions are sustained, we do not anticipate that any writ of injunction or mandamus will be required for the compliance by the mayor and civil service commission with our decision.

It follows from our conclusions before expressed that the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.

456

## On Motion for Rehearing.

The very earnest motion for rehearing presented by appellees' attorneys has received our careful consideration, but fails to raise any doubt in our minds of the soundness of our decision of the questions presented by the record of the case. The criticisms in the motion of some of the conclusions expressed in our main opinion are apparently due to a misconception of the grounds upon which the conclusions are based, which may have been caused by the failure of the writer to more fully and clearly state such grounds.

The first complaint presented in the motion is thus stated: "Because the Court erred in holding that because the Appellee, Oscar F. Holcombe, assigned no reason for discharging the Appellant, the provision of Section 2, Article 5 holding in substance that the Mayor may remove employees in the service of the City for cause whenever in his judgment the public interests demand or will be better served thereby, cannot be invoked by appellees to support the discharge of Appellant, W. R. (Bobby) Ellis."

We made no such holding, and we find nothing in our opinion which seems to us can be reasonably construed as making the holding stated in the motion. The statement in the opinion that the mayor in his letter of discharge "gives no intimation of the cause (of appellant's removal) further than may be inferred from the statement that Director Woods in his letter of May 1st, removing appellant, was acting under the mayor's instructions," was not intended, and we do not think can be reasonably construed, as a holding that because of this failure of the mayor to more specifically state the cause of appellant's discharge, he cannot now claim that the discharge was made for cause. This statement was inserted as showing, by its indorsement of Wood's statements in his letter removing appellant, that such removal was not for cause.

■ But regardless of whether this is a sound conclusion, there was a general demurrer to appellant's petition, and the correctness of the trial court's ruling on the demurrer is the final question presented by the appeal. As pointed out in our former opinion, the petition alleges facts which, if true, and upon general demurrer they must be taken as true, show that the reason for appellant's discharge was political and not for any cause affecting his character, or his qualification for the discharge of the duties

of his employment, or that he had ever been unfaithful in the discharge of those duties.

■ From other conclusions expressed in the opinion, it is clear that this court holds that under the civil service amendment to the charter, the mayor, if he could directly discharge for cause any of the city officers or employees classified under the charter provision as civil service employees, cannot, by so removing such classified employees, deprive them of their right of appeal to the civil service commission. We do not think, however, he can act directly in such removal. The civil service amendment requires such removal to be made by the head of the department under which the employee is working and the department head must first suspend the officer or employee, and such suspension does not become permanent unless the employee fails to appeal to the civil service commission within the time fixed by the civil service amendment, or unless upon such an appeal the commission decides that the employee shall not be reinstated. This construction of the amendment in no way lessens the authority and duty of the mayor to be vigilant in requiring all officers and employees of the city to faithfully discharge their duties. If he learns, or is informed, that any of such employees are not so discharging their duties, he can, just as he did in this case, instruct the head of the department in which the employee is classified to make the removal or suspension, and such suspended employee could then appeal to the civil service commission for final decision of whether his removal should be made permanent. Under the civil service amendment the mayor or city council have power to remove any head of department when in their judgment the best interests of the city will be subserved thereby, and it follows that direction of the mayor to remove any employee for cause would be followed by any head of a department so directed who cared to retain his office.

The second error assigned in the motion is: "Because the court erred in holding that the Civil Service Amendment to the Charter of the City of Houston superseded and repealed those sections of the Charter which gave the Mayor and the City Council the power to remove or discharge employees of the City of Houston."

Here again it can be said this court made no such holding. Attorneys for appellees seem to ignore the plain and unambiguous statements in our former opinion which ex-

pressly limit our conclusions, restricting the power of appellees to discharge at will, to officers and employees classified in accordance with the provisions of the civil service amendment.

The third assignment in the motion is: "Because the Court erred in holding that when the Civil Service Amendment to the Charter of the City of Houston expressly provides that any of the employees and officers of the City classified under the Civil Service Amendment may be suspended by the head of the department in which he is employed and further provides that the decision of the Civil Service Commission upon appeal thereto of the employee or officer so suspended shall be final, it prescribed the only method for removal of such employee."

This assignment correctly states the holding of this court. The soundness of this holding seems so clear to us that we do not deem it necessary to add anything in its support to what is said in our main opinion. However, we add, as we have before indicated in this opinion, that section 3 of the civil service amendment, which is set out in our main opinion, under the title of Removal of Employees, provides in substance that the removal of civil service employees shall be accomplished by a suspension of the employee sought to be removed by the head of the employee's department, and such suspended employee shall have the right of appeal to the civil service commission, and the suspension shall not become permanent unless sustained by the commission. We adhere to our conclusion expressed in our former opinion that this is the exclusive method provided by the city charter for the discharge or permanent removal of officers or employees of the city classified as civil service employees in accordance with the provisions of the civil service amendment. The fact that the case of Bryan v. Sundberg was not a case involving the construction of laws pertaining to the removal of public officers and employees in no way affects or lessens the force of its declaration of the rule which generally applies on the question of repeal by implication, and which we think is the rule applicable to that question upon the facts of this case.

The next complaint in the motion attacks the conclusions of the court that the provisions of the civil service amendment "create a new mode or system of selecting employees for appointment to municipal positions in the service of the City of only those found qualified by the Civil Service

Commission for the duties of their employment and are so classified as directed by the Amendment, and also provide an independent method for the removal of employees so selected and qualified"; and that such methods must be held exclusive, and to supersede all previous conflicting provisions of the charter respecting the appointment and removal of such classified employees. This conclusion is assailed on the ground that in so far as it relates to the appointment of employees to nonpolitical positions it is obiter dicta. This criticism may be technically justified, but how does it harm appellees? The writer did not have in mind the question of obiter dicta when he wrote the conclusion complained of, but the new methods for the selection and removal of civil service employees of the city are so interwoven in the amendment that the clear purpose and intent evidenced by the language of the civil service amendment is that these methods for selection and removal were both exclusive. The court feels under no compulsion to withdraw this conclusion, since our views upon the question of appointment cannot possibly affect the question involved in this case, or the right of the mayor to arbitrarily remove a civil service employee of the city of Houston.

The two remaining assignments in the motion complain of what appellees contend are contradictions or inconsistencies in the construction placed by us upon the civil service amendment. The last of these assignments is: "In the event the Court in its opinion held that the power of the Mayor to discharge has not been entirely taken away by the Civil Service amendment to the Charter, but that by said amendment said power of discharge has been limited and restricted to that of suspension only and that said suspended employee may appeal from said suspension to the Civil Service Commission as is provided in Article 5a of the Charter, then the Court erred in so holding."

If we have not already made ourselves clear upon the question of the right of the mayor to discharge a civil service employee, the writer must despair of being able to make himself clear to attorneys for appellees. It follows from what we have said that the motion for rehearing should be overruled, and it has been so ordered.

There is, however, one paragraph of our main opinion, not referred to in the motion, which contains needless repetitions which tend to produce some ambiguity in the statement therein made. This confus-

ing statement in the opinion is found in the discussion of section 8, art. 7, of the charter, on page 453 [of 69 S.W.(2d)] of our former opinion. The whole section had been previously copied in the opinion, and we should have only set out in our discussion of the question then being considered the following clause in the provision of the section: "and any incumbent of any office, except the Comptroller, may be removed at any time by the Mayor, with or without the concurrence of the Council." This is the part of the section under which appellee mayor claims the right to remove the appellant and which we hold in the main opinion was repealed by the civil service amendment so far as it relates to civil service employees.

Motion refused.