**CITY OF SWEETWATER et al., Petitioners,**

v.

**J. T. GERON, Respondent.**

No. A–9709.

Supreme Court of Texas.

June 3, 1964.

Rehearing Denied July 15, 1964.

Nunn, Griggs & Beall, Sweetwater, for petitioners.

Mays, Leonard, Moore & Dickson, Sweetwater, for respondent.

HAMILTON, Justice.

This case involves the validity of an ordinance of the City of Sweetwater establishing the maximum age limit at 65 for all employees of the City of Sweetwater. The City of Sweetwater is a home rule city in Nolan County, Texas. Since 1948 it has been subject to the provisions of the Firemen's and Policemen's Civil Service Act contained in Article 1269m, Vernon's Ann. Tex.Civ.St. (All references hereinafter to "the Act" pertain to Article 1269m). The respondent, J. T. Geron, was a classified employee of the police department and performed the duties of a policeman. In 1961 the City Commission of the City of Sweetwater enacted an ordinance which provides that all city employees shall be retired at the age of 65. On the effective date of the ordinance, September 30, 1961, respondent Geron was over 70 years of age and was on that day removed from his employment solely because of that ordinance. Respondent brought suit in the district court of Nolan County seeking reinstatement and back pay. The City answered and both parties filed motions for summary judgment. The trial court granted judgment for petitioner City of Sweetwater and denied the relief sought by respondent. On appeal to the Court of Civil Appeals the action of the trial court was reversed and judgment entered for respondent. 368 S.W.2d 151.

The Court of Civil Appeals in effect held that the ordinance of the City of Sweetwater setting the maximum age limit for city employees was invalid in so far as it applies to policemen because it is in conflict with the Firemen's and Policemen's Civil Service Act, Article 1269m.

Section 5 of said article provides that the Civil Service Commission of the city adopting the Act shall make such rules and regulations for the proper conduct of its business as it shall find necessary and expedient and that:

"* * * Such rules and regulations shall prescribe what shall constitute cause for removal or suspension of Firemen or Policemen, but no rule for the removal or suspension of such employees shall be valid unless it involves one or more of the following grounds:

"Conviction of a felony or other crime involving moral turpitude; violations of the provisions of the charter of said city; acts of incompetency; neglect of duty; discourtesy by said employee to the public or to fellow employees while said employee is in line of duty; acts of said employees showing a lack of good moral character; drinking of intoxicants while on duty, or intoxication while off duty; or whose conduct was prejudicial to good order; refusal or neglect to pay just debts; absence without leave; shirking duty, or cowardice at fires; violation of any of the rules and regulations of the Fire Department or Police Department or of special orders, as applicable."

Section 16 of said article sets out in detail the procedure under which a policeman may be suspended or permanently dismissed from his position for violation of rules. It also provides:

"* * * No employees shall be suspended or dismissed by the Commission except for violation of the civil service rules, and except upon a finding by the Commission of the truth of the specific charges against such employee."

Section 16a states the purpose of the Act:

"It is hereby declared that the purpose of the Firemen and Policemen's Civil Service Law is to secure to the

cities affected thereby efficient Police and Fire Departments, composed of capable personnel, free from political influence, and with permanent tenure of employment as public servants. The members of the Civil Service Board are hereby directed to administer the civil service law in accordance with this purpose; * * *."

Admittedly the respondent policeman was not charged with the violation of any rule of the Civil Service Commission, he was not removed by the Civil Service Commission nor was he removed under the procedure set out in said Section 16. He was retired only by operation of the ordinance passed by the City Commission establishing an age limit for all city employees. Consequently, if such ordinance cannot be applied to the policemen because of the Firemen's and Policemen's Civil Service Act, then the respondent should be reinstated as prayed for by him in his suit. On the other hand, if the ordinance is valid as applied to policemen, then the City should prevail. In our opinion the Act does not prohibit the City from legislating with reference to maximum age limit for city policemen.

We have quoted the above provisions of the Firemen's and Policemen's Civil Service Act because it is those provisions which respondent contends take away from the City its authority to enact an ordinance providing for a maximum age limit for firemen and policemen.

The matter of maximum age limits for classified employees is not specifically covered in the Act. The Civil Service Commission is given no authority in this field, nor is the City specifically prohibited from exercising its authority in this field. While the State has pre-empted the field for removal of firemen and policemen for disciplinary reasons, it has not by this Act pre-empted the field of maximum age limits for classified employees.

■ Respondent argues that because the Legislature states the purpose of the Act

is "to secure to the cities affected thereby efficient Police and Fire Departments composed of capable personnel * * * with permanent tenure * * *" we are required to construe Section 5 as containing exclusive grounds for removal. Otherwise the cities would not have, in the police departments, personnel with permanent tenure. As will be demonstrated later in this opinion, the Legislature did not use the term "permanent tenure" in the absolute sense. Section 16a, which states the purpose of the Act, does not grant any additional power to the Civil Service Commission. While a statement by the Legislature of the purpose of an act is helpful in construing it, nevertheless the provisions designed to accomplish that purpose must fairly and reasonably do so. We must look elsewhere in this Act for authority of the Civil Service Commission to bring about permanent tenure of employees in the absolute sense. We do not find it elsewhere. While a rigid and fair enforcement of the rules and regulations promulgated by the Civil Service Commission within the limits prescribed by the Act may tend to create permanent tenure for classified employees, it does not accomplish that purpose without limitations. Although the broad powers granted to home rule cities by the Constitution, Article XI, Section 5, Vernon's Ann.St., may be limited by acts of the Legislature, it seems that should the Legislature decide to exercise that authority, its intention to do so should appear with unmistakable clarity.

■ Respondent contends, and the Court of Civil Appeals has so held, that Section 5 of the Act sets out the exclusive grounds for termination of a classified employee's tenure. An examination of that section reveals that it is disciplinary in nature. It is descriptive of specific acts of misconduct for which an employee may be suspended or discharged. Here it is conceded that we are not concerned with a disciplinary discharge. The termination of respondent's services resulted wholly from the operation of the ordinance establishing a maximum age limit for city employees which was en-

acted by the City Commission to improve the efficiency and economy of governmental operation. While the disciplinary causes for discharge set out in said section are exclusive in so far as the Civil Service Commission has power to dismiss, the Act does not prevent the City from legislating in other fields which may cause the dismissal of employees.

■ The Act itself in Section 21 recognizes that Section 5 is not exclusive as to causes for dismissal. Section 21 provides that in the event any positions in the fire department or police department are vacated or abolished by ordinance and thereby employees are caused to be dismissed, those with the least seniority shall be dismissed first.

But, respondent says, Section 21 grants authority to cities to abolish or vacate positions. In this he is wrong. The section does not grant any authority to the City. It assumes the City has the authority. All that section does is to regulate and control the matter of demotions and dismissals that necessarily result from the action of the City in abolishing or vacating positions.

This court in the case of City of San Antonio v. Wallace, 161 Tex. 41, 338 S.W. 2d 153, recognizes that legislative bodies of cities do have residual control over civil service employment other than those controls that are specifically defined in the Civil Service Act itself, but that such residual control must be exercised in good faith and for the betterment of municipal service.

The problem of whether the Legislature has, by passage of the Act, withdrawn all legislative authority from affected municipalities in all matters affecting employees of the city came to the attention of this court in the case of Glass et al. v. Smith et al., 150 Tex. 632, 244 S.W.2d 645. In that case classified employees of the City of Austin had circulated a petition and secured the proper number of signatures for the purpose of calling a public election by the initiative method. This election was to concern itself with certain classifications of policemen and firemen under the Civil Service Act with which we are here concerned. The City of Austin took the position that Article 1269m, Section 8, was exclusive in its application to classification of employees, and since the City Council had no authority to vary the terms of the Civil Service Act, no right of initiative existed. It refused to call an election. An action for mandamus was brought by the employees and the trial court ordered the election to be held. This result was affirmed by the Court of Civil Appeals and by the Supreme Court. At page 652 of this Court's opinion the following language appears:

"* * * the City Commission in the Commission form of government has always been the primary repository of municipal legislative powers in this state. If the legislature had intended that the Civil Service Commission should supplant the City Council in the exercise of any legislative power it could and should have made that intent known in clear and unmistakable language. Civil Service Commissions are usually regarded as administrative agencies exercising only purely administrative powers. It has been said that 'The fact that the commission (Civil Service Commission) is authorized by statute to make rules does not authorize it to divest the city council of its legal rights as governing body of the city'. Jazwinski v. City of Milwaukee, 253 Wis. 17, 33 N.W.2d 224, 226."

■ Respondent Geron relies heavily on the case of Ellis v. Holcombe, Tex.Civ. App., 69 S.W.2d 449, 1934, writ refused. That case does not involve any statute of the state. It does involve different provisions of the charter of the City of Houston. In 1913 a charter amendment placing certain employees under civil service was adopted. The amendment set up a system for removal of classified employees for cause. At the time of the amendment the

charter already contained a provision which provided that any city employee could be removed by the mayor at will and without cause. Acting under this provision the mayor undertook to remove without cause a classified employee to make room for one of his political supporters. The Court of Civil Appeals held that the amendment setting up the system for removal of employees for cause was repugnant to the prior provision providing for removal without cause, and that the amendment in effect repealed the prior provision in so far as classified employees were concerned. We find nothing in the opinion which compels us to hold that an ordinance providing for a maximum age limit of 65 years for policemen and firemen is repugnant to the provision in Article 1269m providing for a system of removal for classified employees for disciplinary reasons.

At the time this suit arose the Legislature had not enacted any general law with reference to maximum age limits which would affect employees of a city. Subsequently, however, in 1963, the Legislature did pass such a statute, Article 6252–14, V.A.C.S., the pertinent parts of which are here quoted:

> "Sec. 2. No agency, board, * * *, nor any political subdivision of the State of Texas, shall establish a maximum age under sixty-five (65) years * * *; provided, however, nothing in this Act shall be construed to prevent the imposition of minimum and maximum age restrictions for law enforcement peace officers or for fire-fighters; * * *."

We are not citing this statute in support of our holding in this case, for, as stated, it did not become effective until after this case arose, and admittedly it could not control. However, it is interesting to note that when the Legislature did legislate in this field of maximum age limit for employees of state agencies and political subdivisions, it was careful to place no limitation on the authority of municipalities to establish maximum age limits for peace officers and fire fighters.

We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.