**CITY OF AMARILLO, Appellant,**

v.

**Herbert BYTHEWAY, Jr., Appellee.**

**No. 8744.**

Court of Civil Appeals of Texas, Amarillo.

Jan. 31, 1977.

Rehearing Denied Feb. 28, 1977.

Robert D. Cheatham, City Atty., Mallory G. Holloway, Asst. City Atty., Amarillo, for appellant.

James D. Durham, Jr., Amarillo, for appellee.

2. *See Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887 (1960).

REYNOLDS, Justice.

In obedience to a subpoena, Amarillo policeman Herbert Bytheway, Jr., testified, and under the record truthfully, that the reputation of a convicted defendant for truth and veracity was good. As a result, Bytheway was charged by the Amarillo Chief of Police, L. W. Spradlin, with testifying contrary to the facts of the defendant's criminal record in violation of five personnel and police department rules and regulations and indefinitely suspended without pay. The Amarillo Civil Service Commission upheld the indefinite suspension and ordered Bytheway dismissed from the department. The 108th Judicial District Court of Potter County summarily annulled the order.

The overriding question is whether a policeman's truthful testimony compelled by a subpoena is conduct for which he may be suspended and dismissed from the police force. We hold that it is not and affirm the judgment of the district court.

Through an investigation conducted by Detective Bert Collins and other members of the Amarillo Police Department, one Lyndal Martin Stephenson was indicted in Randall County for the offense of aggravated robbery, a first degree felony. Following the guilt-innocence phase of the bifurcated trial, a jury found Stephenson guilty of the offense of robbery, a second degree felony.

Amarillo policeman Herbert Bytheway, Jr., was subpoenaed by Stephenson to testify at the punishment stage of the trial. Bytheway knew Stephenson from previous employment and as an attendant at the church where Bytheway preached. He had heard Stephenson's reputation for truth and veracity discussed in the community.

Upon being served with the subpoena, Bytheway, who neither was requested nor had volunteered to testify, informed his sergeant and asked for the correct procedure. He was instructed to, and he did, appear and testify in uniform as prescribed by the City's law enforcement code of ethics. The district attorney agreed that if Bytheway had not appeared, he would have been subject to the penalties imposed by Article 24.05, Vernon's Ann.C.C.P., for disobedience of the subpoena.

Prior to giving his testimony, Bytheway was asked by District Attorney Randall L. Sherrod if he had heard that Stephenson had been arrested for auto theft and for illegal possession of an M–16 weapon, the charges for which were dismissed, and for the robbery. Bytheway had not heard of the former arrest, but he had heard of the latter two arrests.

Thereafter, Bytheway and several other witnesses, perhaps as many as six, one of whom was the owner of the premises where the robbery had occurred, testified that they knew Stephenson's reputation for truth and veracity in the community in which he resides, and that it was good. The specific introductory question asked Bytheway was:

> Are you acquainted with his general reputation for truth and veracity of a peaceful nature in the community in which he resides?

District Attorney Sherrod conceded that the question concerned only Stephenson's reputation for truth and veracity, and he declared that Bytheway testified truthfully to what he thought was the truth. Bytheway was not asked if he knew Stephenson's reputation in the community for being a peaceable, law-abiding citizen; however, he testified in the hearing before the civil service commission that if he had been asked that question, he would have replied that it was not so good. The State presented no evidence of bad reputation. The jury assessed Stephenson's punishment at five years adult probation.

Upon being informed of Bytheway's appearance and receiving a copy of his testimony, Amarillo Police Chief L. W. Spradlin indefinitely suspended Bytheway without pay for violating certain personnel and police department rules and regulations. The written charges of the rules and regulations violated and the acts constituting the violations, copied verbatim, are:

### I.

"Conduct prejudicial to good order" which is a violation of Article XX, Section 115, of the Personnel Rules of the City of Amarillo adopted by the Civil Service Commission of the City of Amarillo pursuant to Section 5, Article 1269m, V.A.T.S.

Your Acts constituting a violation of the above referenced Civil Service Rule are as follows:

That on April 10 and 11, 1975, you responded to a subpoena to Randall County District Court to testify as a character witness in the sentencing hearing of Lyndol Martin Stevenson, Cause No. 2292–B, who had been convicted on April 9, 1975 for armed robbery. You were told prior to your testimony by Randall County District Attorney, R. L. Sherrod, that the Defendant had been arrested in 1970 for automobile theft; also that the Defendant had a pistol and an M–16 rifle in his possession when he was arrested; and that the Defendant had been convicted of armed robbery the day before your testimony. With all of this information you testified that Lyndol Martin Stevenson had a good reputation for truth and veracity of a peaceful nature in the community within which he resides.

Your action caused a morale factor within the department, especially among the officers who arrested and prepared a case on Mr. Stevenson. The lowering of morale among members of the Police Department is prejudicial to good order. Also prejudicial to good order is the fact that by so testifying contrary to the facts given you by the District Attorney Sherrod, that you have created a situation whereby you would be ineffective as a police officer witness in the prosecution of future armed robbery defendants.

### II.

"Violation of any of the rules and regulations of the department" which is a violation of Article XX, Section 115 of the Personnel Rules of the City of Amarillo adopted by the Civil Service Commission of the City of Amarillo pursuant to Section 5, Article 1269m, V.A.T.S. The Amarillo Police Department Rules and Regulations which you violated are: paragraph 3 of the Law Enforcement Code of Ethics, page 1; paragraphs 3 and 4 of the Introductory Section, pages 2 and 3; and Chapter 8, Section 142, page 115.

A. Page 1, Paragraph 3, Law Enforcement Code of Ethics. I will never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

Your acts constituting a violation of paragraph 3, page 1 of the Law Enforcement Code of Ethics, are as follows:

That you let your personal feelings and friendship influence your decision to testify that Lyndol Martin Stevenson had a good reputation when your intelligence, training, and common sense would indicate to you that a person convicted of a felony in a crime of violence does not have a good reputation. Your testimony was contrary to the facts that had been given you regarding the character and reputation of Mr. Stevenson.

Your testimony was demoralizing to fellow members of the Amarillo Police Department to the extent that some have given affidavits protesting your actions.

Your testimony in this case has to a degree, created a situation whereby you would be ineffective as a police officer witness in the prosecution of future armed robbery defendants.

B. Paragraph 3, Introduction Section, page 2. Efficiency is the first rule of an officer's conduct. A police officer should remember that in the execution of his duties, he acts not for

himself, but for the public, and that his appointment is in no sense for his own advantage. The entire law regulating his function hinges upon this principle. He is required to be governed by no feeling, save zeal to do what the law commands, and should never allow passion to urge him to brutality, nor fear, favoritism or sympathy to induce him to illegal leniency nor neglect of duty. The officer must bear in mind that he represents the dignity and authority of the state and is a representative of the law to those lawful demands all must submit, and such submission can be compelled when necessary. He should use no unnecessary force nor hesitate to use necessary force when circumstances require. The rules and regulations hereinafter set forth are compiled, adopted, and published by the Chief of Police for the information, guidance, government, discipline and administration of the police department of the City of Amarillo, Texas, and the members and employees thereto. They are prepared to present to all members and employees of the department, the duties and obligations required of them in the proper performance of their duties. Any violations of these rules and regulations shall be made the subject of disciplinary charges against all persons responsible for such violations, unless otherwise directed by the Chief of Police.

Your acts constituting a violation of the above portion of the Introduction Section of the Rules and Regulations are as follows:

That you allowed your personal feelings and sympathy to induce you to give opinion testimony contrary to the facts that were given you by the District Attorney prior to your testimony. In so doing, you embarrassed the Police Department, you strained the relationship between the Randall County District Attorney and the Amarillo Police Department and you contributed toward the awarding of a probated sentence for a crime of violence that might otherwise have been a sentence to a corrective institution.

C. Paragraph 2, Introduction Section, page 3. Since it is not possible to anticipate every situation which may arise or to prescribe the specific action requisite for each case, something therefore, must necessarily be left to the intelligence and discretion of the members of the department. Those entrusted with law enforcement must be relied upon to exercise good judgment and apply sound common sense at all times, to make police service equitable and effective.

Your acts constituting a violation of the above referenced portion of the Introduction Section of the Rules and Regulations are as follows:

That you failed to exercise good judgment and apply common sense when you testified that Mr. Stevenson had a good reputation in the community after you were told of Mr. Stevenson's arrest and conviction record.

The rules and regulations do not specifically state that an officer cannot testify to the good character and reputation of a convicted felon, convicted of a crime of violence, and in possession of two illegal weapons at the time of arrest, plus a record of arrest prior to this case, but the rules do point out that something must be left to the intelligence and discretion of the members of the department. The rules further point out that those entrusted with law enforcement must be relied upon to exercise good judgment and apply common sense at all times. You failed to exercise good judgment and to apply common sense when you gave the contradictory testimony in this case.

D. Chapter 8, Section 142. All members concerned in cases for the court are to be punctual in attendance, and shall appear in uniform except Detectives and those who are not required to wear uniform. They shall

have the cases in which they are interested properly prepared, the witnesses properly subpoenaed, and all property which is to be used as evidence suitably arranged for the presentation in court. Members shall at all times be attentive and respectful towards magistrates. When giving testimony, they shall speak calmly and explicitly, distinct, and in an audible tone of voice in order to be easily heard by the court and jury, and shall not smoke, chew gum or tobacco. They shall testify with the strictest accuracy, confining themselves to the case before the court, and neither suppress nor over-state the slightest circumstance with a view of favoring or discrediting any person. When cross-examined, they shall answer with the same readiness and stability as when testifying in support of the charge, remembering that the ends of justice shall be so served by showing a desire of simply to tell the whole truth, whether or not it be in favor or against the prisoner.

Your acts constituting a violation of Chapter 8, Section 142 of the Rules and Regulations are as follows:

That your testimony in this case was obviously designed to favor the defendant and was given after you had been advised by a reputable person, the Randall County District Attorney, that the defendant was not of good character and not a person who a police officer would reasonably believe to have a good reputation in the community.

Bytheway appealed to the Amarillo Civil Service Commission. In addition to hearing the testimony of Bytheway, Stephenson and District Attorney Sherrod, from which the foregoing recitation was taken, the commission heard the testimony of Detective Bert Collins and Police Chief L. W. Spradlin.

Detective Collins, the officer who investigated the robbery with which Stephenson was charged and convicted, was present and available to testify at Stephenson's trial that Stephenson's reputation was bad, but he was not called to testify. He told the commission that he was acquainted with Stephenson's reputation in the community in which he resides both for being a peaceful, law-abiding citizen and for truth and veracity, and that it was bad; however, Collins stated that any reputation testimony he would have would be confined to Stephenson's criminal acts. It was his opinion that Bytheway's testimony affected his and his fellow officers' morale because Bytheway used bad judgment which caused Collins to doubt his word.

Police Chief Spradlin informed the commission that Bytheway's suspension "was taken based upon his testimony in that trial, not as his being a witness," and that his action was right in this case "(e)ven if it (Bytheway's testimony) was the truth in his opinion." Chief Spradlin's rationale for his view was that: if Bytheway had the information given him as to the arrest record of Stephenson and then gave the testimony he did, the Chief did not need him as a police officer; as a result of Bytheway's testimony, he did not think Bytheway could testify as effectively as a witness for the State in another case, especially so in an armed robbery case; if an officer thinks that a convicted robber who has been arrested with a machine gun, even though the charge was dismissed, is of good reputation, the Chief did not need him; he doubted that the people with whom one works have more opportunity to observe one for truth and veracity than the arresting officer; what the people in a community think of one might be important for a criminal trial, but for the Chief's purposes, it does not make any difference; if one is not peaceable and law-abiding, it stands to reason that he is not truthful; and that anybody who is convicted of a felony has a bad reputation regardless of who they are, except Jesus Christ "because he was persecuted."

Chief Spradlin said that Bytheway's testimony was detrimental to the morale of the police department because it appeared to most of the people in the detective division "that it was a case of Officer Bytheway

being against us in this matter." Prefacing his statement by remarking that he could not truthfully say he thought Bytheway lied in his testimony, the Chief said:

> . . . I was put in a position where if he was lying when he said that he felt this guy had a good reputation, then I certainly don't need him on the police department.
>
> And by the same token, if he was telling the truth and he thinks that a convicted armed robber and a guy that's arrested with a machine gun and a guy that's been arrested for auto theft has a good reputation, then I don't need him as a police officer.

Upon this record, the Amarillo Civil Service Commission upheld the indefinite suspension and ordered Bytheway permanently dismissed from the police department. Upon the same record, the district court denied the City's motion for summary judgment, granted Bytheway's summary judgment motion, and ordered "the Civil Service Commission ruling . . . be held for naught and set aside."

■ In appealing, the City submits that this is a situation of balancing Bytheway's right of freedom of speech with his right to be a policeman where, on balance, the substantial evidence that his judicial statement hurt or imperiled the discipline of the police department justified his suspension and dismissal. The question for decision is not cognizable in those terms, for this is not the situation where an officer spoke from his own volition to the detriment of discipline; rather, it is the situation where the officer was subpoenaed to speak in a judicial proceeding where, so the City conceded on submission, he spoke truthfully. The question, then, is whether truthful testimony compelled by subpoena constituted conduct for which a policeman may be disciplined. A negative answer is compelled.

The City of Amarillo adopted the Firemen's and Policemen's Civil Service Act, Vernon's Ann.Civ.St. art. 1269m, by which the State has pre-empted the field for removal of firemen and policemen for disciplinary reasons. *City of Sweetwater v. Geron,*

380 S.W.2d 550, 552 (Tex.1964). In general, Section 5 of the Act provides that the City may impose any reasonable conditions for occupying an office within its control and may discharge an employee for violating one of those conditions; but the section also provides that no rule for removal or suspension shall be valid unless it involves one or more of the grounds listed there which, insofar as the civil service commission has the power to dismiss, are exclusive. *City of Sweetwater v. Geron, supra,* at 553. Among the disciplinary grounds listed are "conduct . . . prejudicial to good order" and "violation of any of the rules and regulations of the . . . Police Department", the two grounds invoked to authorize the action taken against Bytheway.

It is at once apparent from the written charges and the testimony that these grounds were invoked because of a misconception of Bytheway's testimony. He merely testified to the community's appraisal of Stephenson's disposition to speak the truth. Yet, he was charged with ascribing to Stephenson a good general character or a good general reputation which did not agree with his police record. The distinction between what Bytheway did and what he was accused of doing is vital.

Although often confused, actual character is distinct from reputation; character refers to the inherent qualities of a person, while reputation refers to the collective opinion of the community evidencing the qualities of character. 2 C. McCormick and R. Ray, Texas Law of Evidence § 1324 (2d ed. 1956). One of the traits of character is the disposition for truthfulness, 1 C. McCormick and R. Ray, Texas Law of Evidence § 644 (2d ed. 1956), and the reputation for truth and veracity evidences that trait. Long ago in *Boon v. Weathered,* 23 Tex. 675, 682 (1859), it was noted that a man's honesty or veracity may be in issue without regard to other aspects of his character. There, it was said at 683–85:

> . . . A person, therefore, whose general character is bad, may, notwithstanding, possess such a degree of veracity, as to entitle him to credit upon oath;

and whether he does so or not, can only be ascertained by an inquiry into his character for truth.

. . . (I)n order to ascertain whether a man is credible or not, an inquiry must be made into his character upon that particular point. No one can be so bold as to deny, that if a man be worthy of credit under oath, notwithstanding a general bad character in other respects, then no person to whom his testimony is of value, should be robbed of it upon any ethical theory concerning the kindred nature of vices . . . (I)t can be asserted to be, indeed, true, that a man may preserve his veracity, amidst the general wreck of his character.

Moreover, one must speak, as Bytheway spoke, of reputation from general report, and not from his own private opinion. *Boon v. Weathered, supra,* at 686. Thus, reputation evidence is, of necessity, based upon hearsay, *Sanchez v. State,* 398 S.W.2d 117, 120 (Tex.Cr.App.1966); that is, on what the witness heard others say. *Henry v. State,* 433 S.W.2d 430, 433 (Tex. Cr.App.1968). On the other hand, knowledge based only on the accused's "rap sheet" and the facts of the offense for which the accused is being tried is nothing more than an inadmissible opinion, and that knowledge does not qualify one to testify that the accused has a bad reputation as a peaceable and law-abiding citizen. *Mitchell v. State,* 524 S.W.2d 510, 513 (Tex.Cr.App. 1975).

Applying the legal principles to the facts, it is obvious, and we hold, that compelling truthful testimony is conducive, instead of prejudicial, to good order, and that the giving of such testimony by a policeman complies with, rather than constitutes violations of, the rules quoted in the written charges. As the rules prescribe, a police officer, no less than a private citizen, has a duty to testify fully, frankly and truthfully in judicial proceedings. Accordingly, Bytheway was not subject to discipline under either of the two grounds for giving truthful testimony.

The judgment of the district court is affirmed.

## ON MOTION FOR REHEARING

In its motion for rehearing, the City says our holding that Bytheway was indefinitely suspended for testifying truthfully under subpoena demonstrates our misunderstanding of the City's case. The City now advocates that its complaint, which was not the subject of either of the City's two points of error, was that Bytheway failed as a police officer to adequately prepare himself as a witness. We are not told in the motion how Bytheway failed; therefore, we must presume that the City is alluding to the mention made in its original brief that Bytheway testified "(w)ithout checking Stephenson's criminal record." Our original opinion seems clear—and we now reiterate—that the reputation testimony elicited from Bytheway was required to be based on what he had heard others say, and that it is not legally permissible for any witness to give reputation testimony based only on the accused's criminal record.

Next, the City takes us to task for not holding that the officers' statements to the effect that Bytheway's testimony hurt or imperiled the discipline of the police department was substantial evidence to support the civil service commission's order. Again, our original opinion seems clear—and we now reiterate—that giving truthful testimony in a judicial proceeding not only is not substantial evidence, but it is no evidence of conduct which either violates any valid departmental rule or is prejudicial to good order.

The motion for rehearing is overruled.