

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

April 12, 1977

The Honorable Bill Clayton
Speaker of the House
Texas House of Representatives
State Capitol
Austin, Texas 78701

Opinion No. H- 978

Re: Authority of political
subdivisions to adopt land
use and control measures
pursuant to article 8280-13,
V.T.C.S.

Dear Speaker Clayton:

You have asked our opinion whether the governing body
of a political subdivision may adopt and enforce land use and
control measures pursuant to article 8280-13, V.T.C.S., which
are in excess of the minimum standards required to qualify
for coverage under the National Flood Insurance Program.
Article 8280-13 was enacted by the Legislature in 1969, at its
first session after congressional enactment of the National
Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4128. That
Act makes federally sponsored and subsidized flood insurance
available to residents of areas where an appropriate public
body has adopted adequate land use and control measures
consistent with comprehensive criteria promulgated by the
Secretary of Housing and Urban Development.

Article 8280-13 states its purpose as follows:

> The purpose of this Act is to evidence a
> positive interest in securing flood
> insurance coverage under this Federal
> program, and to so procure for those
> citizens of Texas desiring to participate;
> and the promoting of public interest by
> providing appropriate protection against
> the perils of flood losses and encouraging
> sound land use by minimizing exposure of
> property to flood losses.

Sec. 2. Section 5 of that article authorizes political
subdivisions to take:

> all necessary and reasonable actions to
> comply with the requirements and criteria
> of the National Flood Insurance Program . . . .

You ask whether this authorization enables political subdivisions to adopt and enforce requirements in excess of the minimum necessary to qualify for insurance under the federal program.  We assume your request does not extend to the authority of home rule cities which derive their powers from article 11, section 5 of the Constitution, subject only to explicit limitation by the Constitution, general law or charter.  Article 8280-13 does not limit the powers a home rule city may otherwise authorize.  See Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641 (Tex. 1975); City of Sweetwater v. Geron, 380 S.W.2d 550 (Tex. 1964).

The Secretary of Housing and Urban Development has promulgated various requirements for local land use and control standards.  24 C.F.R. §§ 1910.3, 1910.4.  These required standards must be adopted and enforced in order for any community to qualify for flood insurance under the federal program.  24 C.F.R. § 1909.2.  Additionally, the Secretary has promulgated various "considerations" "to encourage the formulation and adoption of overall comprehensive management plans for flood-prone and mudslide-prone areas."  24 C.F.R. § 1910.21 et seq.  These "considerations" address social and economic development "goals," but do not appear to be a part of the required measures requisite to eligibility for insurance.  It is not clear whether these "considerations" constitute "criteria of the National Flood Insurance Program" with which political subdivisions are authorized to comply by section 5 of article 8280-13.  In any event, the authorization of section 5 clearly is not an unconditional grant of authority for political subdivisions to enact land use regulations not otherwise sanctioned by law.  The regulations so enacted must have as their purpose and effect compliance with the requirements and criteria promulgated pursuant to the National Flood Insurance Program.

In this connection, you also ask if a governing body may continue to enforce land use measures adopted pursuant to article 8280-13 after they are no longer required under the Federal Act because of an action by the Flood Insurance Administration in identifying the 100-year flood surface elevation or other action.  Federal regulations provide that an eligible community must require building permits for all proposed construction or other improvements and perform other supervisory functions in the entire community when the Flood Insurance Administrator has not yet defined the special flood hazard areas within the community.  24 C.F.R. § 1910.3(a). After the Administrator has identified the flood plain area having special flood hazards, however, building permits and community supervision are required only in the identified flood plain area.  24 C.F.R. § 1910.3(b).  As the Administrator makes findings as to the 100-year flood surface elevation, provides floodway data and identifies coastal high hazard areas, additional community regulation is required within the affected areas.  24 C.F.R. § 1910.3(c) (d)(e).

While the mandatory requirements of 24 C.F.R. § 1910.3 and the nonobligatory "considerations" of 24 C.F.R. § 1910.21 et seq. contemplate broad land use powers by political subdivisions in flood-prone and mudslide-prone areas, these regulations nowhere speak of land use controls outside those areas after the Flood Insurance Administrator has identified a flood plain area with special flood hazards.  In view of the limited grant of authority by article 8280-13 for political subdivisions to take reasonable and necessary actions "to comply with the requirements and criteria of the National Flood Insurance Program," we believe it clear that land use regulations adopted by subdivisions (other than home rule cities) pursuant to article 8280-13 have no application outside the areas designated by the Flood Insurance Administrator after that designation is made.

Finally, you ask if the Texas Water Development Board may adopt rules restricting political subdivisions from exercising control measures in excess of the minimum compliance criteria.  Article 8280-13 directs the Water Development Board to "aid, advise and coordinate the efforts" of political subdivisions and to "adopt and promulgate

reasonable rules and regulations which are necessary for the orderly effectuation of the respective authorizations herein." V.T.C.S. art. 8280-13, §§ 6(a), 8.  While the Board therefore has general powers to coordinate the "orderly effectuation" of land use regulations, we do not believe article 8280-13 grants to the Board power either to limit the grant of authority to political subdivisions contained therein or to control activities of subdivisions outside the scope of that article.

### S U M M A R Y

Article 8280-13, V.T.C.S., authorizes political subdivisions to enact land use regulations which have as their purpose and effect compliance with requirements and criteria promulgated pursuant to the National Flood Insurance Program.  Such regulations have no application outside areas designated by the Flood Insurance Administrator after that designation is made.  Article 8280-13 does not empower the Texas Water Development Board to limit the grant of authority to political sub-divisions contained therein or to control activities of subdivisions outside the scope of that article.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee