

# Office of the Attorney General
## State of Texas

DAN MORALES
ATTORNEY GENERAL

April 14, 1994

Honorable O.H. "Ike" Harris
Chair
Committee on State Affairs
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-289

Re: Whether a City of Dallas ordinance regulating establishments that sell alcoholic beverages falls within section 109.57(d)(2) of the Alcoholic Beverage Code (RQ-630)

Dear Senator Harris:

You ask whether a City of Dallas ordinance regulating establishments that sell alcoholic beverages is preempted by state law. The City of Dallas ("Dallas" or the "city") is a home-rule city. The Texas Constitution grants such cities all the power of self-government not *expressly* denied them by the legislature. Tex. Const. art. XI, § 5; *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993). The Texas Constitution prohibits a home-rule city, however, from enforcing any legislation inconsistent with state laws or the state constitution. Tex. Const. art. XI, § 5; *Dallas Merchant's*, 852 S.W.2d at 491 (citing *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982), *cert. denied*, 459 U.S. 1087 (1982)). The Texas Supreme Court has instructed that, in determining whether an ordinance is fatally inconsistent with state law on the same subject matter, courts must seek to construe the two in a way that will leave both in effect, if possible. *City of Richardson v. Responsible Dog Owners*, 794 S.W.2d 17, 19 (Tex. 1990). "[T]he mere fact that the legislature has enacted a law addressing a subject does not mean the complete subject matter is completely preempted." *Id.* Moreover, it is well established that "if the Legislature chooses to preempt a subject matter usually encompassed by the broad powers of a home-rule city, it must do so with unmistakable clarity." *Dallas Merchant's*, 852 S.W.2d at 491 (citing *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex. 1964)).

The Alcoholic Beverage Code (the "code") contains a preemption provision, section 109.57,[1] which provides in pertinent part:

> (a) Except as is expressly authorized by this code, a regulation, charter, or ordinance promulgated by a governmental entity of this

---

[1]Section 1.06 of the Alcoholic Beverage Code provides as follows:

> Unless otherwise specifically provided by the terms of this code, the manufacture, sale, distribution, transportation, and possession of alcoholic beverages shall be governed exclusively by the provisions of this code.

Alco. Bev. Code § 1.06. We do not address this provision.

> state may not impose stricter standards on premises or businesses required to have a license or permit under this code than are imposed on similar premises or businesses that are not required to have such a license or permit.
>
> (b) It is the intent of the legislature that this code shall exclusively govern the regulation of alcoholic beverages in this state, and that except as permitted by this code, a governmental entity of this state may not discriminate against a business holding a license or permit under this code.

Alco. Bev. Code § 109.57(a), (b). Subsection (d) of section 109.57 sets forth exceptions to the general preemptive effect of section 109.57, providing in pertinent part:

> (d) This section does not affect the authority of a governmental entity to regulate, in a manner as otherwise permitted by law, the location of:
>
> . . . .
>
> (2) an establishment that derives 75 percent or more of the establishment's gross revenue from the *on-premise sale* of alcoholic beverages.

*Id.* § 109.57(d) (emphasis added). The specific question before us is whether the ordinance falls within the exception set forth in section 109.57(d)(2).

In *Dallas Merchant's,* the Texas Supreme Court struck down a Dallas ordinance that dispersed the location of alcohol-related businesses, on the grounds that it was preempted by section 109.57 of the code. In that opinion, the court stated, "The Legislature's intent is clearly expressed in section 109.57(b) of the [code]--the regulation of alcoholic beverages is exclusively governed by the provisions of the [code] unless otherwise provided. . . . Section 109.57 clearly preempts an ordinance of a home-rule city that regulates where alcoholic beverages are sold under most circumstances." 852 S.W.2d at 491-92 (citation and footnotes omitted). The court also noted that section 109.57(a) provides that an ordinance may not impose stricter standards on alcohol related businesses than on non-alcohol related businesses:

> For example, under section 109.57(a), an ordinance requiring all businesses with the same kind of premises to have a fire extinguisher on their premises would not violate section 109.57(a). On the other hand, an ordinance requiring an alcohol related business to have two fire extinguishers and only requir[ing] a non-alcohol related business with the same kind of premises to have one fire extinguisher would violate section 109.57(a).

*Id.* at 492 n.5; *see also* Attorney General Opinion DM-229 (1993). The court expressed no opinion regarding the scope or applicability of section 109.57(d). 852 S.W.2d at 492 n.4.

You explain that in the wake of the Texas Supreme Court's decision in *Dallas Merchant's*, the city has gone back to the drawing board and has adopted a new ordinance on this subject. *See* Dallas, Tex., Ordinance 21,735 (June 23, 1993). The new ordinance purports to regulate establishments that derive 75 percent or more of their gross revenue from the sale of alcoholic beverages on the premises. For example, the ordinance defines one regulated category of establishment, the "beverage store," as an establishment "for the retail sale of soft drinks, beer, wine, or liquor that is not to be consumed on the premises that derives 75 percent or more of its gross revenue on an annual basis from the on-premise sale of alcoholic beverages, as defined by the [code]." *Id.* § 5 (amending Dallas, Tex., Code § 51-4.211(10)); *see also id.* § 26 (amending Dallas, Tex., Code § 51A-4.210(b)(17)) (similarly defining the term "liquor store"). Apparently, the city's position is that this ordinance is permitted by section 109.57(d)(2) as a regulation of the location of "establishment[s] that derive[] 75 percent or more of the[ir] gross revenue from the *on-premise sale* of alcoholic beverages." Alco. Bev. Code § 109.57(d)(2) (emphasis added).

The validity of the Dallas ordinance turns upon the meaning of the term "on-premise sale" in section 109.57(d)(2) of the code. You contend that this term is intended to allow governmental entities to regulate establishments that derive 75 percent or more or their gross revenue from the sale of alcoholic beverages for *on-premise consumption*. The city, on the other hand, appears to construe this term to allow governmental entities to regulate establishments that derive 75 percent or more of their gross revenue from the sale of alcoholic beverages on the premises *regardless of the place of consumption*.

The relevant language in section 109.57(d)(2) was added by the 70th Legislature in conference committee. Acts 1987, 70th Leg., ch. 303, § 8 (eff. June 11, 1987). We have not been able to locate any contemporaneous legislative history. Therefore, we construe the meaning of the term "on-premise sale" by examining the use of the same or similar language in the code. The terms "on-premise" and "off-premise" in the code are generally associated with the site of consumption rather than the site of sale. For example, the term "off-premise permit" generally refers to a permit to sell alcoholic beverages for off-premises consumption, and the term "on-premise permit" generally refers to a permit to sell alcoholic beverages for on-premises consumption. *See, e.g.,* Alco. Bev. Code §§ 11.49(d), 22.01, 26.01, 71.01, 71.03. In addition, these words are often paired with the word "consumption." *See, e.g., id.* §§ 11.391(a), 11.49(e), 24.01, 26.01, 32.01.

We have found only one other use of the term "on-premise sale" in the code. It appears in newly enacted section 52.03 relating to package store tasting permits, which provides as follows:

> The commission or the administrator may only issue a package store tasting permit to a holder of a package store permit. For the

> purposes of this code and any other law of the state or political subdivision of the state, a package store tasting permit may not be considered a permit authorizing the sale of alcoholic beverages for on-premise consumption. *Since no charge may be made for a sample tasted on the premises of a package store, none of a package store's revenue may be deemed to be revenue from the on-premise sale of alcoholic beverages.*

Acts 1993, 73d Leg., ch. 934, § 49 (enacting Alcoholic Beverage Code, section 52.03) (emphasis added). The term "on-premise sale" in this provision obviously refers to sale for on-premise consumption. Although a legislative interpretation contained in an act passed by a subsequent legislature is not controlling, it may be very significant and is entitled to substantial weight. *Stephens County v. Hefner*, 16 S.W.2d 804 (Tex. 1929).[2]

Based on our examination of the code, we conclude that the term "on-premise sale" means the sale of alcoholic beverages for on-premise consumption. Because the term "on-premise sale" in section 109.57(d)(2) means the sale of alcoholic beverages for on-premise consumption, rather than the sale of alcoholic beverages on the premises, section 109.57(d)(2) does not exempt the ordinance from the general preemptive effect of section 109.57, except to the extent the ordinance regulates the location of establishments that derive 75 percent or more of their gross revenue from the sale of alcoholic beverages for on-premise consumption. We express no opinion regarding whether the ordinance may be expressly permitted by some other provision of the code. *See* Alco. Bev. Code § 109.57(a), (b).

---

[2]The city, in a brief submitted to this office, places great emphasis on the fact that legislation was introduced in the 72d Legislature to amend section 1.04 of the code to define the term "on-premise sale" as "a sale for on-premise consumption." *See* C.S.S.B. 3, Acts 1991, 72d Leg., 2d C.S. § 4 at 3. The proposed legislation stated that this amendment was to be "a nonsubstantive change made only to clarify and reflect the intent of the legislature." *Id.* § 5. Representative Wilson withdrew this language on the House floor. *See* Debate on S.B. 3 on the Floor of the Senate, 72d Leg. 1-2 (Aug. 22, 1991) (transcript available from Senate Staff Services). We do not believe that this legislative history is dispositive. *See City of Ingleside v. Johnson*, 537 S.W.2d 145 (Tex. Civ. App.–1976, no writ) (rejection of an amendment does not control construction of statute). We have reviewed the transcript of the legislative hearing and it is not apparent to us that the fact that this proposed amendment to the code was not adopted indicates that the legislature intended to take a position contrary to the proposed amendment, especially given that the proposed amendment was intended to be merely a nonsubstantive clarification.

## S U M M A R Y

The term "on-premise sale" in section 109.57(d)(2) of the Alcoholic Beverage Code means the sale of alcoholic beverages for on-premise consumption, rather than the sale of alcoholic beverages on the premises. Therefore, section 109.57(d)(2) does not exempt the City of Dallas ordinance from the general preemptive effect of section 109.57, except to the extent the ordinance regulates the location of establishments that derive 75 percent or more of their gross revenue from the sale of alcoholic beverages for on-premise consumption.

Very truly yours,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

DREW T. DURHAM
Deputy Assistant Attorney General for Criminal Justice

WILL PRYOR
Special Counsel

RENEA HICKS
State Solicitor

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General